IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNIVERSITY OF MIAMI, | ) ) |
| Defendant. | ) ) ) |

**COMPLAINT**
CIVIL ACTION NO.

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and the Equal Pay Act of 1963, to correct unlawful employment practices on the basis of sex and to provide relief to Charging Party Louise Davidson-Schmich. Defendant University of Miami discriminated against Louise Davidson-Schmich by paying her less than a male counterpart for performing equal and/or similar work.

JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. §1981a, to enforce provisions of Title VII.

3.  This action is authorized and instituted pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c), 217, to

1

enforce provisions of the Equal Pay Act of 1963 ("Equal Pay Act"), codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

4. Defendant's principal place of business is within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## PARTIES

5. Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

6. EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of the Equal Pay Act, and is expressly authorized to bring this action by Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705.

7. At all relevant times, Defendant University of Miami ("UM"), a Florida non-for-profit corporation, has continuously done business in the State of Florida with its principal place of business in Miami, Florida, and has continuously had at least 15 employees.

8. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

9. At all relevant times, Defendant University of Miami has continuously acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all relevant times, Defendant University of Miami has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j).

11. At all relevant times, Defendant University of Miami has been an enterprise engaged in commerce or in the production of goods for commerce as an enterprise that is engaged in the operation an institution of higher education, pursuant to Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

12. At all relevant times Defendant University of Miami employed Charging Party Louise Davidson-Schmich.

## CONDITIONS PRECEDENT

13. More than thirty days prior to the institution of this lawsuit, Charging Party Louise Davidson-Schmich filed a charge with the Commission alleging violations of Title VII.

14. On March 5, 2019, the Commission issued to Defendant UM a Letter of Determination finding reasonable cause to believe that the EPA and Title VII were violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

15. On March 22, 2019, the Commission issued to Defendant UM a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

17. UM is a private, non-for-profit organization that provides services in education, research and health care.

18. UM is comprised of 12 schools and colleges, including the College of Arts and Science ("CAS"), which includes the Department of Political Science.

19. Charging Party Louise Davidson-Schmich is part of the faculty of the Department of Political Science.

20. Gregory Koger is part of the faculty of the Department of Political Science.

21. Faculty ranking within CAS is as follows from lowest to highest: lecturer, senior lecturer, assistant professor, associate professor, full professor.

22. UM hired Charging Party Louise Davidson-Schmich in August 2000 as a first-year assistant professor in the Department of Political Science.

23. When UM hired Charging Party in August 2000 UM paid her a salary of $50,000.

24. In the spring/summer of 2007, Charging Party had six-years of experience.

25. In the spring/summer of 2007, UM awarded Charging Party tenure and promotion to associate professor.

26. When UM awarded Charging Party tenure and promotion to associate professor, UM paid Charging Party a salary of $72,500.

27. UM hired Gregory Koger ("Koger") in the spring/summer of 2007 as an assistant professor in the Department of Political Science.

28. When UM hired Koger as an assistant professor, Koger had four years of experience at another institution, the Univ. of Montana.

29. When UM hired Koger as an assistant professor, UM paid Koger $81,000.

30. In the spring/summer of 2007, Charging Party had already published a book, while Koger did not publish one until 2010.

31. In the spring/summer of 2007, Charging Party had published more articles than

Koger.

32. In December 2016, Charging Party and Koger were both reviewed for promotion to full professor at the same time.

33. Koger and Charging Party were reviewed and evaluated for promotion to full professor based on the same qualification standards.

34. UM reviews and evaluates candidate for promotion to full professor based on candidates' record in research, teaching and service.

35. Both Charging Party and Koger were recommended for promotion to full professor with a 5-0 committee vote.

36. Reviews by the CAS Dean noted that each candidate had strength and weaknesses in their records.

37. With respect to Charging Party the CAS Dean wrote: "I echo the external reviewers' general assessment that the candidate's book is of high significance and visibility. I would have preferred that her article had been placed in higher impact venues, as some letter writers mention. Given the focus of her research, her articles are appropriately placed, but they had a narrower constituency and therefore fewer citations. The candidate's Fulbright award is a clear indication of future trajectory to a wider audience and of international visibility. This award as well as the quality of her second monograph, on balance, argue in favor of the candidate's promotion to Professor."

38. With respect to Koger the CAS Dean wrote: "In conclusion, while I have some reservations about the placement of articles produced by Professor Koger post-tenure, I also conclude that he has met the departmental criteria with respect to research and scholarship. In my estimation, the many positive reviews of his two books and pre-tenure articles in top journals

have provided him a significant launch pad that has earned him a very strong reputation among other scholars of American politics. Thus, on the basis of the departmental criteria, I concur with the chair and the ad hoc committee that he be promoted to the rank of Professor."

39. Both Charging Party and Koger received ratings above the norm for teaching.

40. For the service component, Koger's review lacked any distinction.

41. For the service component, the Chair noted that Charging Party "has willingly assumed more than her share of service assignments—in the profession as well as at the university—when asked or on her own initiative."

42. Charging Party and Koger were both promoted to full professor around the same time in late 2016/early 2017.

43. In late 2016/early 2017 the Ad Hoc Committee on Women Faculty released a memorandum (the "Memorandum") making recommendations to the CAS leadership on pay equity issues that were revealed through an audit done of salaries within the CAS.

44. The Memorandum stated that women make $32,889 less than men on average in the CAS.

45. The Memorandum stated that the percentage of women in ranks of assistant professor and associate professors were 48.4% to 43.8%, respectively. However, the percentage of women in full professor rank dropped to 19.1%.

46. In May 2017, Charging Party and a group of female faculty members met with the CAS Dean to discuss concerns they had about unequal treatment of female faculty members compared to male faculty members.

47. Specifically, the group of female faculty members discussed the following with the CAS Dean at the May 2017 meeting: the findings contained in the Memorandum; lack of

transparency in how travel and research funds within the Department of Political Science are dispersed; lack of transparency and unfair practices in the process of determining pay increases, such as lack of recognition to service component.

48. At the May 2017 meeting with the CAS Dean, Charging Party specifically raised her concern about being paid less than other male professors, and about pay increases being based on percentage of current salary, which would reinforce and perpetuate existing pay disparities.

49. The CAS Dean did not do anything to address the concerns raised by group of female faculty members at their May 2017 meeting.

50. In late 2017, Charging Party made a request to UM's Title IX Coordinator to anonymously investigate whether she was receiving unequal pay compared to male counterparts, but Charging Party never received a response to her request.

51. In May 2018, via an email inadvertently sent to Charging Party, Charging Party learned that UM paid her $112,400 in salary for the academic year, while UM paid Koger $137,366 during the academic year for equal and/or similar work as full professors in the Department of Political Science.

52. For the summer of 2018, UM paid Koger more than Charging Party for teaching summer session, as summer session pay is equivalent to approximately 8.75% of academic-year salary.

53. Charging Party filed a charge of discrimination with the EEOC the following month, on June 4, 2018.

54. After Charging Party field her EEOC charge of discrimination, the CAS Dean reported to human resources that Charging Party had received a high percentage increase in her

salary for 2018 but did not ensure Charging Party was paid the same as male full professors in the Department of Political Science performing similar or equal work.

55. UM has not provided for back pay for any previous years where Charging Party was under-payed.

56. UM was put on notice on at least four occasions of unequal pay based on sex—through the Memorandum, the May 2017 meeting between the CAS Dean and female faculty members, Charging Party's request to the Title IX Coordinator for an investigation, and Charging Party's EEOC's Charge of Discrimination—yet UM did not remedy the pay disparity based on sex.

57. Due to UM's unequal treatment of her based on her sex, Charging Party has suffered and continues to suffer damages.

## STATEMENT OF EQUAL PAY ACT CLAIMS

58. Paragraphs 17 through 57 are fully incorporated herein.

59. Since at least 2007, UM has violated the Equal Pay Act, Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), by paying Charging Party wages at a rate less than the rate it pays male professors.

60. Defendant UM violated the Equal Pay Act because it paid different wages to employees of the opposite sex, including Charging Party, for equal work on jobs the performance of which requires equal skill, effort, and responsibility.

61. At various times during the course of her employment, Charging Party performed work equal in skill, effort, and responsibility to the work of certain male employees who were paid higher compensation, including Koger.

62. As a result of the acts complained of above, UM has unlawfully withheld and is

continuing to withhold the payment of wages due to Charging Party.

63. The unlawful practices complained of above were and are willful.

64. Due to UM's violation of the Equal Pay Act, Charging Party has suffered damages.

65. UM's violation of the Equal Pay Act is willful.

66. Due to UM's violation of the Equal Pay Act, Charing Party has suffered damages.

## STATEMENT OF TITLE VII CLAIMS

67. Paragraphs 17 through 57 are fully incorporated herein.

68. Since at least 2007, Defendant UM engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Charging Party to discrimination based on sex, paying her less compensation that similarly situated comparators, including Koger.

69. The effects of the practices complained of above has been to deprive Charging Party of equal employment opportunities, including equal wages, and otherwise adversely affect her employment status because of her sex, female.

70. The unlawful practices complained of above were intentional and caused Charging Party to suffer emotional distress including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/ or physical damages.

71. The unlawful employment practices complained of above were and are being done with malice or with reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

72. The Commission respectfully requests that this Court grant the following relief

under the Equal Pay Act and Title VII:

    A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex including but not limited to permitting discriminatory compensation based on sex.

    B.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from paying wages to employees of one sex at rates less than the rates at which they pay employees of the opposite sex for substantially equal work, considering the skills, effort, and responsibilities of the jobs, under similar working conditions.

    C.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for female faculty members and which eradicate the effects of its past and present unlawful employment practices.

    D.    Order Defendant to pay appropriate back wages, in amounts to be determined at trial, and an equal sum of liquidated damages, and prejudgment interest to Charging Party, including compensation withheld in violation of the Equal Pay Act and liquidated damages for the willful violation of the Equal Pay Act.  29 U.S.C. §§ 206(d)(3), 29 U.S.C. §§ 216, 217, 29 U.S.C. § 255.

    E.    Order Defendant to raise Charging Party's pay to the level of male employees performing work equal in skill, effort, and responsibility to Charging Party's work. 29 U.S.C. Sec. 206(d)(3), 216, 217.

F.	Order Defendant to make Charging Party whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, under Title VII.

G.	Order Defendant to make Charging Party whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

H.	Order Defendant to make Charging Party whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

I.	Order Defendant to pay Charging Party punitive damages for its intentional, malicious and reckless conduct, as described above, in amounts to be determined at trial

J.	Grant such further relief as the Court deems necessary and proper in the public interest.

K.	Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Date: July 29, 2019

                              RESPECTFULLY SUBMITTED,

                              JAMES L. LEE
                              Deputy General Counsel
                              GWENDOLYN Y. REAMS
                              Associate General Counsel

                              U.S. EEOC

131 M Street, NE
Washington, D.C. 20507


ROBERT E. WEISBERG
Regional Attorney
KRISTEN FOSLID
Supervisory Attorney

S/ BEATRIZ BISCARDI ANDRE
BEATRIZ BISCARDI ANDRE
Trial Attorney
New York Bar No. 4394599
Special S.D. Fla. ID: A5501597
beatriz.andre@eeoc.gov
U.S. Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: (305) 808-1803
Fax: (305) 808-1835