IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:19-cv-23131

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

LOUISE DAVIDSON-SCHMICH,

    Intervenor Plaintiff,

    v.

UNIVERSITY OF MIAMI,

    Defendant
_____/

## INTERVENOR PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** Intervenor Plaintiff, LOUISE DAVIDSON-SCHMICH, by and through her undersigned counsel, sues Defendant UNIVERSITY OF MIAMI, and alleges the following:

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and the Equal Pay Act of 1963, to correct unlawful employment practices on the basis of sex and to provide relief to Intervenor Plaintiff Louise Davidson-Schmich. Defendant University of Miami discriminated against Intervenor Plaintiff by paying her less than a male

counterpart for performing equal and/or similar work.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to:

    A. Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. §1981a, to enforce provisions of Title VII; and

    B. Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c), 217, to enforce provisions of the Equal Pay Act of 1963 ("Equal Pay Act"), codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

3. Defendant's principal place of business is within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## PARTIES

4. Intervenor Plaintiff Louise Davidson-Schmich is of female gender.

5. At all relevant times, Intervenor Plaintiff Louise Davidson-Schmich has been employed by Defendant University of Miami ("UM").

6. At all relevant times, Defendant UM, a Florida non-for-profit

corporation, has continuously done business in the State of Florida with its principal place of business in Miami, Florida, and has continuously had at least 15 employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

8. At all relevant times, Defendant UM has continuously acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

9. At all relevant times, Defendant UM has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j).

10. At all relevant times, Defendant UM has been an enterprise engaged in commerce or in the production of goods for commerce as an enterprise that is engaged in the operation an institution of higher education, pursuant to Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

## **CONDITIONS PRECEDENT**

11. Intervenor Plaintiff Louise Davidson-Schmich filed a timely

charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging violations of Title VII.

12. On March 5, 2019, the Commission issued to Defendant UM a Letter of Determination finding reasonable cause to believe that the EPA and Title VII were violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

13. On March 22, 2019, the Commission issued to Defendant UM a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14. The EEOC has filed suit against the Defendant and Intervenor Plaintiff has a statutory right to intervene pursuant to 42 U.S.C. §2000e-5(f)(1) ("[t]he person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission….").

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

16. UM is a private, non-for-profit organization that provides services in education, research and health care.

17. UM is comprised of 12 schools and colleges, including the College of Arts and Science ("CAS"), which includes the Department of Political

Science.

18. Intervenor Plaintiff Louise Davidson-Schmich is part of the faculty of the Department of Political Science.

19. Gregory Koger is part of the faculty of the Department of Political Science.

20. Faculty ranking within CAS is as follows from lowest to highest: lecturer, senior lecturer, assistant professor, associate professor, full professor.

21. UM hired Intervenor Plaintiff Louise Davidson-Schmich in August 2000 as a first- year assistant professor in the Department of Political Science.

22. When UM hired Intervenor Plaintiff in August 2000 UM paid her a salary of $50,000.

23. In the spring/summer of 2007, Intervenor Plaintiff had six-years of experience.

24. In the spring/summer of 2007, UM awarded Intervenor Plaintiff tenure and promotion to associate professor.

25. When UM awarded Intervenor Plaintiff tenure and promotion to associate professor, UM paid Intervenor Plaintiff a salary of $72,500.

26. UM hired Gregory Koger ("Koger") in the spring/summer of 2007 as an assistant professor in the Department of Political Science.

27. When UM hired Koger as an assistant professor, Koger had four

years of experience at another institution, the University of Montana.

28. When UM hired Koger as an assistant professor, UM paid Koger $81,000.

29. In the spring/summer of 2007, Intervenor Plaintiff had already published a book, while Koger did not publish one until 2010.

30. In the spring/summer of 2007, Intervenor Plaintiff had published more articles than Koger.

31. In December 2016, Intervenor Plaintiff and Koger were both reviewed for promotion to full professor at the same time.

32. Koger and Intervenor Plaintiff were reviewed and evaluated for promotion to full professor based on the same qualification standards.

33. UM reviews and evaluates candidate for promotion to full professor based on candidates' record in research, teaching and service.

34. Both Intervenor Plaintiff and Koger were recommended for promotion to full professor with a 5-0 committee vote.

35. Reviews by the CAS Dean noted that each candidate had strength and weaknesses in their records.

36. With respect to Intervenor Plaintiff the CAS Dean wrote: "I echo the external reviewers' general assessment that the candidate's book is of high significance and visibility. I would have preferred that her article had been placed in higher impact venues, as some letter writers mention. Given the focus of her research, her articles are appropriately placed, but they had

a narrower constituency and therefore fewer citations.  The candidate's Fulbright award is a clear indication of future trajectory to a wider audience and of international visibility.  This award as well as the quality of her second monograph, on balance, argue in favor of the candidate's promotion to Professor."

37. With respect to Koger the CAS Dean wrote: "In conclusion, while I have some reservations about the placement of articles produced by Professor Koger post-tenure, I also conclude that he has met the departmental criteria with respect to research and scholarship.  In my estimation, the many positive reviews of his two books and pre-tenure articles in top journals have provided him a significant launch pad that has earned him a very strong reputation among other scholars of American politics.  Thus, on the basis of the departmental criteria, I concur with the chair and the ad hoc committee that he be promoted to the rank of Professor."

38. Both Intervenor Plaintiff and Koger received ratings above the norm for teaching.

39. For the service component, Koger's review lacked any distinction.

40. For the service component, the Chair noted that Intervenor Plaintiff "has willingly assumed more than her share of service assignments—in the profession as well as at the university—when asked or

on her own initiative."

41. Intervenor Plaintiff and Koger were both promoted to full professor around the same time in late 2016/early 2017.

42. In late 2016/early 2017 the Ad Hoc Committee on Women Faculty released a memorandum (the "Memorandum") making recommendations to the CAS leadership on pay equity issues that were revealed through an audit done of salaries within the CAS.

43. The Memorandum stated that women make $32,889 less than men on average in the CAS.

44. The Memorandum stated that the percentage of women in ranks of assistant professor and associate professors were 48.4% to 43.8%, respectively. However, the percentage of women in full professor rank dropped to 19.1%.

45. In May 2017, Intervenor Plaintiff and a group of female faculty members met with the CAS Dean to discuss concerns they had about unequal treatment of female faculty members compared to male faculty members.

46. Specifically, the group of female faculty members discussed the following with the CAS Dean at the May 2017 meeting:  the findings contained in the Memorandum; lack of transparency in how travel and research funds within the Department of Political Science are dispersed; lack of transparency and unfair practices in the process of determining pay

increases, such as lack of recognition to service component.

47. At the May 2017 meeting with the CAS Dean, Intervenor Plaintiff specifically raised her concern about being paid less than other male professors, and about pay increases being based on percentage of current salary, which would reinforce and perpetuate existing pay disparities.

48. The CAS Dean did not do anything to address Plaintiff Intervenor's concern about being paid less than other male professors.

49. In late 2017, Intervenor Plaintiff made a request to UM's Title IX Coordinator to anonymously investigate whether she was receiving unequal pay compared to male counterparts, but Intervenor Plaintiff never received a response to her request.

50. In May 2018, via an email inadvertently sent to Intervenor Plaintiff, Intervenor Plaintiff learned that UM paid her $112,400 in salary for the academic year, while UM paid Koger $137,366 during the academic year for equal and/or similar work as full professors in the Department of Political Science.

51. For the summer of 2018, UM had set Koger's pay to be more than Intervenor Plaintiff for teaching summer session, as summer session pay is equivalent to approximately 8.75% of academic-year salary.

52. Intervenor Plaintiff filed a charge of discrimination with the EEOC the following month, on June 4, 2018.

53. After Intervenor Plaintiff filed her EEOC charge of discrimination, the CAS Dean reported to human resources that Intervenor Plaintiff had received a high percentage increase in her salary for 2018 but did not ensure Intervenor Plaintiff was paid the same as male full professors in the Department of Political Science performing similar or equal work.

54. UM has not provided for back pay for any previous years where Intervenor Plaintiff was under-paid.

55. UM was put on notice on at least four occasions of unequal pay based on sex— through the Memorandum, the May 2017 meeting between the CAS Dean and female faculty members, Intervenor Plaintiff's request to the Title IX Coordinator for an investigation, and Intervenor Plaintiff's EEOC's Charge of Discrimination—yet UM did not remedy the pay disparity based on sex.

56. Due to UM's unequal treatment of her based on her sex, Intervenor Plaintiff has suffered and continues to suffer damages.

**STATEMENT OF EQUAL PAY ACT CLAIMS**

57. Paragraphs 2.B, 8 through 10, and 15 through 56 are fully incorporated herein.

58. Since at least 2007, UM has violated the Equal Pay Act, Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), by paying Intervenor Plaintiff wages at a rate less than the rate it pays male professors.

59. Defendant UM violated the Equal Pay Act because it paid

different wages to employees of the opposite sex, including Intervenor Plaintiff, for equal work on jobs the performance of which requires equal skill, effort, and responsibility.

60. At various times during the course of her employment, Intervenor Plaintiff performed work equal in skill, effort, and responsibility to the work of certain male employees who were paid higher compensation, including Koger.

61. As a result of the acts complained of above, UM has unlawfully withheld and continuing to withhold the payment of wages due to Intervenor Plaintiff.

62. The unlawful practices complained of above were and are willful.

63. Due to UM's violation of the Equal Pay Act, Intervenor Plaintiff has suffered damages.

64. UM's violation of the Equal Pay Act is willful.

65. Due to UM's violation of the Equal Pay Act, Intervenor Plaintiff has suffered damages.

### **STATEMENT OF TITLE VII CLAIMS**

66. Paragraphs 2.A, 7, and 11 through 56 are fully incorporated herein.

67. Since at least 2007, Defendant UM engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Intervenor Plaintiff to discrimination

based on sex, paying her less compensation that similarly situated comparators, including Koger.

68. The effect of the practices complained of above has been to deprive Intervenor Plaintiff of equal employment opportunities, including equal wages, and otherwise adversely affect her employment status because of her sex, female.

69. The unlawful practices complained of above were intentional and caused Intervenor Plaintiff to suffer emotional distress including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/ or physical damages.

70. The unlawful employment practices complained of above were and are being done with malice or with reckless indifference to the federally protected rights of Intervenor Plaintiff.

**PRAYER FOR RELIEF**

71. Intervenor Plaintiff Louise Davidson-Schmich respectfully requests that this Court grant the following relief under the Equal Pay Act and Title VII:

    A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex including but not limited to permitting discriminatory compensation based on sex.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from paying wages to employees of one sex at rates less than the rates at which they pay employees of the opposite sex for substantially equal work, considering the skills, effort, and responsibilities of the jobs, under similar working conditions.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for female faculty members and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to pay appropriate back wages, in amounts to be determined at trial, and an equal sum of liquidated damages, and prejudgment interest to Intervenor Plaintiff, including compensation withheld in violation of the Equal Pay Act and liquidated damages for the willful violation of the Equal Pay Act. 29 U.S.C. §§ 206(d)(3), 29 U.S.C. §§ 216, 217, 29 U.S.C. § 255.

E. Order Defendant to raise Intervenor Plaintiff's pay to the level of male employees performing work equal in skill, effort, and responsibility to Intervenor Plaintiff's work. 29 U.S.C. Sec. 206(d)(3), 216, 217.

F. Order Defendant to make Intervenor Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be

determined at trial, under Title VII.

      G.    Order Defendant to make Intervenor Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

      H.    Order Defendant to make Intervenor Plaintiff whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      I.    Order Defendant to pay Intervenor Plaintiff punitive damages for its intentional, malicious and reckless conduct, as described above, in amounts to be determined at trial.

      J.    Order Defendant to pay Intervenor Plaintiff her attorneys' fees and costs of this action.

      K.    Grant such further relief as the Court deems necessary and proper in the public interest.

**\_\_INTENTIONALLY LEFT BLANK\_\_**

## **JURY TRIAL DEMAND**

Intervenor Plaintiff Louise Davidson-Schmich requests a jury trial on all questions of fact raised by this Complaint.

        Respectfully submitted,

        AMLONG & AMLONG, P.A.
        500 Northeast Fourth Street
        Fort Lauderdale, Florida  33138
        Telephone: (954) 462-1983
        Facsimile: (954) 523-3192

By: */s/ Karen Coolman Amlong*
Karen Coolman Amlong
Florida Bar No. 275565
KAmlong@TheAmlongFirm.com
Patricia L. Willis
Florida Bar No. 294410
PWillis@TheAmlongFirm.com

***Attorneys for Intervenor Plaintiff***

\\amlong3\cpshare\cpwin\history\190909_0001\1696.30