**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.: 1:19-CV-23131-SCOLA/LOUIS**

EQUAL   EMPLOYMENT   OPPORTUNITY
COMMISSION,

      **Plaintiff,**

**and**

**LOUISE DAVIDSON-SCHMICH,**

      **Intervenor-Plaintiff,**

**v.**

**UNIVERSITY OF MIAMI,**

      **Defendant.**

_____/

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, University of Miami, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 56.1, hereby moves for final summary judgment on all claims asserted against it by Plaintiff, Equal Employment Opportunity Commission ("EEOC"), and Intervenor-Plaintiff, Louise Davidson-Schmich ("Dr. Davidson-Schmich"). In the operative Complaint (D.E. 1) and Intervenor-Plaintiff's Complaint and Demand for Jury Trial (D.E. 13), the EEOC and Dr. Davidson-Schmich assert two parallel claims against the University: (1) violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) ("EPA"); and (2) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"). Both claims are premised on the theory that Dr. Davidson-Schmich is paid less than Dr. John Gregory Koger because of her sex. However, there is not a scintilla of evidence to support such a claim.

During the administrative process that preceded this lawsuit, and throughout this litigation, the EEOC and Dr. Davidson-Schmich have taken the position that, because Drs. Davidson-Schmich and Koger are both "Professors" within the University's Department of Political Science, they must perform the same job and must receive the same pay. The idea that all professors are interchangeable widgets simply is not supported by the law or the facts. To begin, the record evidence establishes that Drs. Koger and Davidson-Schmich do not perform the same job at the University: They do not teach the same classes, conduct the same research, specialize in the same fields, publish in the same journals/presses (or have the same impact) or perform the same service duties at the University. Because they do not share the same tasks, they do not perform the same job at the University. Standing alone, these undisputed facts are fatal to their claims.

But there is more. Even if the Court were to adopt the theory that all professors perform the same job simply by virtue of having that title, the University still can prevail because it can show that the pay differential was based on any factor other than sex. There is no dispute that Drs. Davidson-Schmich and Koger were hired in two different job markets seven years apart. Dr. Davidson-Schmich was hired shortly after receiving her Ph.D. as a first-year Assistant Professor. Dr. Koger, on the other hand, was hired away from another university with four years of experience and an impressive publishing record (and after the University unsuccessfully attempted to hire him two years prior). His higher qualifications simply are worth more in any labor market. Beyond that, Dr. Koger has more "impact" in his field than Dr. Davidson-Schmich has in hers, as measured by objective criteria like citation counts, publishing ranks and media appearances. Finally, given Dr. Koger's higher profile, the University is cognizant of the possibility that another university could poach him (just as the University did from his prior institution years ago); to combat that,

the University pays Dr. Koger more. All of these reasons are legitimate business justifications that have nothing to do with gender.

For all of these reasons, the University respectfully submits that summary judgment in its favor on all claims is warranted. Submitted herewith in support of this Motion is the University's Notice of Filing Summary Judgment Evidence (D.E. 81) and Statement of Undisputed Material Facts ("SUMF") (D.E. 83).

## MEMORANDUM OF LAW

### I.    Legal Standard on Summary Judgment

Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions and the like "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Swindle v. Jefferson Cty. Com'n*, 593 Fed. Appx. 919, 922 (11th Cir. 2014) (citing Fed.R.Civ.P. 56(a) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The plain language of Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

After the movant has met its burden, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id*. at 587. "[T]o survive summary judgment, the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015

(citing *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.,* 446 F.3d 1160, 1162 (11th Cir. 2006)). "[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Howard v. Memnon*, 572 Fed. Appx. 692, 695 (11th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## II.     The EPA Claims Fail.

The EPA provides, in pertinent part, as follows:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

To establish a *prima facie* case under the EPA, the plaintiff must show "that an employer pays different wages to employees of opposite sex 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974), in turn quoting 29 U.S.C. § 206(d)(1)). "Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions to the Equal Pay Act: (i) a seniority system; (ii) a merit pay system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex." *Id.* (quoting

*Brock v. Ga. Sw. Coll.*, 765 F.2d 1026, 1036 (11th Cir. 1985), in turn citing 29 U.S.C. § 206(d)(1)). "If the employer establishes that the disparity is justified by one of these exceptions then the plaintiff must come forward with affirmative evidence that indicates that the proffered reason for the disparity is actually a pretext for sex discrimination." *Id*.

Here, the EEOC and Dr. Davidson-Schmich cannot establish a *prima facie* case because they cannot show that Drs. Davidson-Schmich and Koger perform the same job at the University. Even if they could carry that burden, the University has a legitimate, non-discriminatory and non-pretextual explanation for the salary differential. In either case, summary judgment in favor of the University is appropriate.

**A.     The EEOC and Dr. Davidson-Schmich Cannot Establish a *Prima Facie* Case.**

An EPA claim requires the Plaintiff to "show that her employer paid employees of the opposite gender different wages for equal work on jobs requiring equal skill, effort, and responsibility." *Garcia v. Univ. of Miami*, No. 1:12-CV-20009-UU, 2012 WL 12845123, at *5 (S.D. Fla. Dec. 20, 2012) (citing *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) and *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)) (granting summary judgment to the University on an EPA claim). "This is achieved by showing that the jobs themselves are substantially equal, rather than by comparing the skills and qualifications of the individual employees holding those jobs." *Id*. Where the jobs at issue are merely "similar" or where only "comparable work" or "like jobs" are at issue, an EPA claim fails as a matter of law. *Id*. In sum, the "proper domain of the Equal Pay Act consists of standardized jobs in which a man is paid . . . more than a woman . . . and there are no skill differences." *Id*. at *6 (quoting *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 771-72 (7th Cir. 2007)) (ellipses in original).

As the Eleventh Circuit has noted, the standard for determining whether jobs are equal in terms of skill, effort, and responsibility is "high":

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that "the jobs involved must be ***virtually identical***, that is, they would be very much alike or closely related to each other." The restrictions in the Act were meant "to apply only to jobs that are substantially identical or equal."

*Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (emphasis added) (quoting *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973)).[1] The "controlling factor under the Equal Pay Act is job content—the actual duties the respective employees are called upon to perform." *Id.* (quoting *Pearce v. Wichita Cty., City of Wichita Falls, Texas, Hospital Board*, 590 F.2d 128, 133 (5th Cir. 1979)).

Thus, the focus is not on job titles or job descriptions. *Slattery v. Precision Response Corp.*, No. 04-60931-CIV, 2005 WL 6103681, at *13 (S.D. Fla. June 30, 2005), *aff'd*, 167 Fed. Appx. 139 (11th Cir. 2006). Instead, the proper inquiry is on "the actual duties the respective employees are called upon to perform." *Id.* (citing *Waters*, 874 F.2d at 799). *See also Blackman v. Fla. Dept. of Bus. & Prof'l Regulation*, 599 Fed. Appx. 907, 911 (11th Cir. 2015) ("it is the 'actual job content,' not job titles or job descriptions[,] that is controlling"). In other words, the Court must conduct an "under-the-hood comparison" of the jobs performed by Drs. Davidson-Schmich and Koger. *See Garcia v. Univ. of Miami*, No. 1:12-CV-20009-UU, 2012 WL 12845123, at *6 (S.D. Fla. Dec. 20, 2012).

Continuing the automotive analogy, an "under-the-hood" comparison demonstrates that, like in My Cousin Vinny, the claims asserted here do not hold water. The only thing that Drs.

---

[1]   In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

Davidson-Schmich and Koger have in common is that they both hold the rank of Full Professor within the Department of Political Science. Their actual jobs are entirely different, as the EEOC and Dr. Davidson-Schmich expressly have admitted. They do not teach (and never have taught) the same classes at the University. They do not publish in the same publications. They also do not specialize in the same teaching/research areas. In fact, a simple comparison of their Activity Reports since 2008 makes clear that Drs. Davidson-Schmich and Koger perform completely different jobs at the University. There is virtually no overlap between the job duties that Drs. Davidson-Schmich and Koger actually perform.

That is because "a professor's academic qualifications and expertise are inherently inseparable from the duties and skills required of the job." *Schultz v. Bd. of Trs. of Univ. of W. Fla.*, No. 306CV442/RS/MD, 2007 WL 2066183, at *19 (N.D. Fla. July 13, 2007). "A university professor may only teach the subjects for which she possesses the requisite knowledge and expertise." *Id*. To that end, the recent case of *Spencer v. Virginia State Univ.*, 919 F.3d 199 (4th Cir. 2019), is instructive. There, a sociology professor similarly alleged that her male comparators performed substantially similar work because each had the same common core of job responsibilities (such as "teaching"), the performance of which she alleged required the same skills. *Id*. at 204. The Court rejected that contention and affirmed summary judgment for the defendant-university:

> In alleging this necessary equality, a plaintiff may not rely on broad generalizations at a high level of abstraction. ... But Spencer attempts just such an impermissibly general comparison. In Spencer's view, all University professors perform equal work because they all perform the same essential tasks: preparing syllabi and lessons, instructing students, tracking student progress, managing the classroom, providing feedback, and inputting grades. ... The performance of these tasks, Spencer posits, requires the same skills: studying, preparing, presenting, discussing, and so forth. ... But these tasks and skills are shared by middle-school teachers and

> law-school professors, pre-algebra teachers and biomedical-engineering professors.
>
> This attempted comparison ultimately relies on the common title of "professor" plus some generalized responsibilities (*e.g.*, teaching students). Yet we have rejected an analogous claim that jobs with the same title and only vaguely corresponding responsibilities can be considered equal. . . .
>
> Spencer's bird's-eye view is particularly unpersuasive given the inherent features of academia. Professors are not interchangeable like widgets. Various considerations influence the hiring, promotion, and compensation of different professorial jobs. ... As a result, faculty salary decisions require a complex balancing of factors. Among other things, those decisions account for the differences in skill and responsibility attendant to different jobs.

*Id*. (internal citations omitted).

This conclusion is not unique to the academic context. "In the medical field, for example, specialists typically earn more than generalists. Obviously, a neurosurgeon can expect to earn more than a general practitioner." *Schultz v. Bd. of Trs. of Univ. of W. Fla.*, No. 306CV442/RS/MD, 2007 WL 2066183, at \*19 (N.D. Fla. July 13, 2007). This is so even though both have the title of "doctor." Similarly, courts have rejected the "principle that the work of all veterinarians is equivalent, thereby ignoring distinctions among the different specialties in veterinarian medicine." *Chiaramonte v. Animal Med. Ctr.*, 677 Fed. Appx. 689, 691–92 (2d Cir. 2017) (affirming summary judgment on EPA claim and noting that, "[o]than the broad generalizations drawn from the fact that the alleged comparators are department heads and veterinarians, their work content is simply not equivalent to that of [the plaintiff]'").

The same holds true when attempting tto classify all attorneys as the same, as the EEOC well knows. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247 (2d Cir. 2014). In that case, the EEOC claimed that the Port Authority paid its female nonsupervisory attorneys at a lesser rate

than their male counterparts for "equal work" in violation of the EPA. In affirming the district

court's entry of judgment on the pleadings in favor of the Port Authority, the Second Circuit stated:

> To support its claim that the attorneys performed "equal work," the EEOC pled broad facts concerning the attorneys' jobs (such as that the attorneys all have "the same professional degree," work "under time pressures and deadlines," and utilize both "analytical" and "legal" skills) that are generalizable to virtually all practicing attorneys. The EEOC did not, however, plead *any* facts particular to the attorneys' actual job duties. Instead, the EEOC proceeded under a theory that, at the Port Authority, "an attorney is an attorney is an attorney" – that is, that the dozens of nonsupervisory attorneys working at the Port Authority during the relevant period (in practice areas ranging from Contracts to Maritime and Aviation, and from Labor Relations to Workers' Compensation) were all doing equal work – and that, as a result, the EEOC was not required to detail similarities between the attorneys' job duties (or other factual matter as to the content of the attorneys' jobs) to state a plausible EPA claim.
>
>               *          *          *
>
> We conclude that the EEOC's failure to allege any facts concerning the attorneys' actual job duties deprives the Court of any basis from which to draw a reasonable inference that the attorneys performed "equal work," the touchstone of an EPA claim. Accordingly, the complaint failed to state a plausible claim for relief.

*Id*. at 248.

Notwithstanding this authority, the EEOC and Dr. Davidson-Schmich now pursue the same

type of claim - - this time, that "a professor is a professor is a professor." That is simply not a valid

claim under the EPA. *See, e.g., Spencer v. Va. State Univ.*, 919 F.3d 199 (4th Cir. 2019) ("the mere

fact that the plaintiff and four of her peers share the title 'Associate Professor,' without more, is

not sufficient to render them appropriate comparators.").

Because the EEOC and Dr. Davidson-Schmich cannot establish a *prima facie* case,

summary judgment in favor of the University is appropriate. *See Adams v. City of Montgomery*,

569 Fed. Appx. 769, 773 (11th Cir. 2014) ("[s]ummary judgment is appropriate if the plaintiff fails

to satisfy any one of the elements of a *prima facie* case") (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998)).

      **B.**      **The University has a Legitimate, Non-Discriminatory Explanation for the Pay Differential.**

      Even if the Court finds that a *prima facie* case has been established, summary judgment in favor of the University still is appropriate because the evidence establishes that the differences in pay are based on factors other than sex. In the university context, such legitimate factors include "(1) field of expertise and degree; (2) market rate and inversion; and (3) rank and promotion." *Schultz v. Bd. of Trs. of Univ. of W. Fla.*, No. 306CV442/RS/MD, 2007 WL 2066183, at *21 (N.D. Fla. July 13, 2007). *See also Summy-Long v. Penn. State Univ.*, 226 F. Supp. 3d 371, 378-79 (M.D. Pa. 2016), *aff'd*, 715 Fed. Appx. 179 (3d Cir. 2017) (faculty salaries are a function of a combination of factors, including the faculty member's rank at hire, experience and specific expertise, and payment to faculty under a merit-based system rewards scholarly output and the attainment of prestigious national grants, as well as market factors such as the demand for and prestige of a particular discipline).

      As the Eleventh Circuit has explained, factors such as "outstanding service to the university, administrative duties, publications, research, supervision of doctoral students, and performance" are "not based on sex and are sufficient to sustain an employer's burden to show that the salary disparity does not result from sex discrimination." *Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623–24 (11th Cir. 1991). The fact that some of these factors are inherently subjective does not have them any less legitimate. "So long as subjective business justifications, not part of a merit system, are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." *Id.* (citing *Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1011 (11th Cir. 1984)). Relatedly, the fact that no one factor is dispositive is immaterial. *See Schultz*,

2007 WL 2066183, at *22 ("I find that the University has satisfied its burden of proving that any difference in Plaintiff's salary can be justified by a factor other than sex. While no individual factor, taken in isolation, is necessarily dispositive, the factors identified by the University, taken as a whole, conclusively explain why Plaintiff earns less than the male counterparts whom she identifies.").

Further, prevailing market rates and salary inversion are permissible considerations. "Across the nation and at the University, business faculty who are hired today command much higher salaries than business faculty who were hired in 1989, the year in which Plaintiff was hired, even when the salaries are adjusted for inflation. This phenomenon that new hires in the field of higher business education earn more than established faculty is called 'inversion' or 'compression.'" *Schultz,* 2007 WL 2066183, at *21–22. This inversion is "caused by market forces, particularly, the scarcity of graduates in the business field with Ph.D. degrees" and the basic concepts of supply and demand, which increase the market value of new hires. *Id.* It is simply wrong for the EEOC and Dr. Davidson-Schmich to "ignore[] the current market in her field and improperly compare[] her salary to more recent hires." *See id. See also Horner v. Mary Inst.*, 613 F.2d 706, 714 (8th Cir. 1980) ("[A]n employer may consider the market place value of the skills of a particular individual when determining his or her salary.") (citing *Christensen v. Iowa*, 563 F.2d 353, 356 (8th Cir. 1977)); *Summy-Long v. Penn. State Univ.*, 226 F. Supp. 3d 371, 415 (M.D. Pa. 2016) ("faculty salaries are affected by market factors, such as the demand for and prestige of a particular discipline"), *aff'd*, 715 Fed. Appx. 179 (3d Cir. 2017).

Equally permissible are considerations of public relations and university prestige/reputation. *See, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1322 (9th Cir. 1994) ("Coach Raveling's national television appearances and motion picture presence, as well as his

11

reputation as an author, make him a desirable public relations representative for USC. An employer may consider the marketplace value of the skills of a particular individual when determining his or her salary."). *Longmire v. Regents of the Univ. of CA*, 344 Fed. Appx. 485, 486 (10th Cir. 2009) (affirming district court's grant of summary judgment on EPA claim because *inter alia* the plaintiff "did not have the same skill sets or national reputations and experience as her comparators and performed work that was not substantially equal to their work").

Finally, it is entirely permissible to set starting salaries as "a function of several variables, including the faculty member's rank at hire, experience, and specific expertise" and then to "allot merit increases from a limited pool of funds" based on a professor's "level of performance." *Summy-Long*, 226 F. Supp. 3d at 415.

Applying many of these factors, the Eleventh Circuit recently affirmed summary judgment in favor of the defendant-university on similar claims brought by a plaintiff-professor. *Smith v. Fla. A & M Univ. Bd. of Trs.* 831 Fed. Appx. 434 (11th Cir. 2020). In *Smith*, a professor sued her university-employer under Title VII and the Equal Pay Act, alleging gender discrimination in pay. *Id.* at 435. Like here, the *Smith* professor attempted to compare herself to a male professor. *Id.* at 438-39. The university contended that differences in pay were based on differences in teaching experience and credentials at the time of hire. *Id.* at 439-441. Further, a university salary analysis showed that any differences in pay were not based on gender but, rather, were based on other factors, including salary inversion. *Id.* Based on those facts, the Eleventh Circuit affirmed summary judgment for the university. *Id.*

All of these legitimate, non-sex-based factors exist here. The record evidence establishes that the University's starting salary decisions are market-based. Annual raises are based on individual performance (including teaching, publications and prestige/reputational benefit to the

University) and allocated from a limited pool of funds. Finally, multiple salary analyses confirm that there is no relationship between gender and salary at the University.[2] In sum, the University has carried its burden of establishing that its pay decisions are based on a factor other than sex.

### C.     The EEOC and Dr. Davidson-Schmich Cannot Establish Pretext.

Now, the burden shifts to the EEOC and Dr. Davidson-Schmich to rebut the University's explanations "with evidence showing that" these explanations are "pretextual or offered as a post-event justification for a gender-based differential." *Reddy v. Dep't of Educ., Ala.*, 808 Fed. Appx. 803, 810 (11th Cir. 2020) (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)). "To establish pretext, the plaintiff 'must produce evidence which directly establishes discrimination, or which permits a jury to reasonably disbelieve the employer's proffered reason.'" *Id*. (quoting *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003)). "An employee cannot establish pretext 'by simply quarreling with the wisdom' of the defendant's proffered nondiscriminatory reason." *Id*. (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*)).

A plaintiff "cannot recast the reason [proffered by the employer] but must meet it head on and rebut it." *Springer v. Convergys Customer Mgt. Grp. Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007). *See also Barsorian v. Grossman Roth, P.A.*, 572 Fed. Appx. 864, 869 (11th Cir. 2014) (affirming summary judgment because plaintiff failed to meet the employer's reason "head on and rebut[] it"). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1252 (S.D. Fla. 2009), *aff'd*, 389 Fed. Appx. 936 (11th Cir. 2010); *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

---

[2]     The fact the highest-paid Full Professor in the Department is a woman and the lowest-paid Full Professor in the Department is a man further undermines any claim of gender bias.

Clearly, the EEOC and Dr. Davidson-Schmich cannot meet their burden of establishing pretext. There exists not a scintilla of evidence in this case to suggest that the University's decisions are pretextual and actually based on gender. Accordingly, they cannot establish pretext.

For all of these reasons, summary judgment in favor of the University is appropriate on the EEOC's and Dr. Davidson-Schmich's EPA claims.

## III.   The Title VII Claims Fail.

For the same reasons articulated above, summary judgment on the EEOC's and Dr. Davidson-Schmich's Title VII is appropriate.[3] *See, e.g.*, *Reddy v. Dep't of Educ., Ala.*, 808 Fed. Appx. 803, 812 (11th Cir. 2020) ("We therefore conclude the district court did not err in granting DOE's motion for summary judgment as to Reddy's and Sellman's EPA appointment pay discrimination claim. For the same reasons, the district court also did not err in granting DOE's motion for summary judgment as to Reddy's and Sellman's Title VII pay discrimination appointment claim."); *Schultz v. Bd. of Trs. of Univ. of W. Fla.*, No. 306CV442/RS/MD, 2007 WL 2066183, at *23 (N.D. Fla. July 13, 2007) ("I have previously granted partial summary judgment in favor of the University and dismissed with prejudice Plaintiff's claims under Title IX and the FEEA on legal principles. I now find that all claims asserted by Plaintiff under Title VII, FCRA, Title IX, FEEA, and EPA also require dismissal on their merits for the reasons enunciated in this opinion. Plaintiff has failed to support her claims as a matter of law that the University discriminated against her on the basis of sex.").

---

[3]     The elements of an unequal pay claim are the "same under Title VII and Equal Pay Act." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981) (citing *Ammons v. Zia Co.*, 448 F.2d 117, 119-20 (10th Cir. 1971)). *See also Summy-Long v. Penn. State Univ.*, 226 F. Supp. 3d 371, 414 (M.D. Pa. 2016) ("[C]ourts have recognized that dispositions of claims brought pursuant to the Equal Pay Act 'are authoritative' in cases where plaintiffs also 'raise a claim of equal pay' under Title VII.") (quoting *Gunther v. Wash. Cty.*, 623 F. 2d 1303, 1313 (9th Cir. 1979), *aff'd*, 452 U.S. 161 (1981)), *aff'd*, 715 Fed. Appx. 179 (3d Cir. 2017).

To the extent the Court wishes to apply the traditional Title VII analysis, the same result should obtain. In a Title VII claim, the plaintiff always bears the burden of proving the employer's unlawful discrimination and retaliation. *Carter v. Bowman*, 172 Fed. Appx. 915, 917 (11th Cir. 2006) (citing *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)). A plaintiff may prove her claim through direct or circumstantial evidence. *Id*. Direct evidence constitutes "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate." *Id*. (quoting *Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1105 (11th Cir. 2001)). This record is devoid of any direct evidence.

Accordingly, the EEOC and Dr. Davidson-Schmich must prove their claims through circumstantial evidence using the familiar *McDonnell-Douglas* burden-shifting framework. *See Gerard v. Bd. of Regents of State of Ga.*, 324 Fed. Appx. 818, 825 (11th Cir. 2009). This framework involves three steps: (1) the plaintiff must first establish a *prima facie* case of discrimination or retaliation; (2) if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory and non-retaliatory reason for the employment action; and (3) if the employer articulates such a reason, the burden then shifts back to the plaintiff to show that the employer's proffered reason was pretextual. *Id*.

Here, the EEOC and Dr. Davidson-Schmich cannot establish a *prima facie* case, which requires them to establish *inter alia* that the University "treated similarly situated employees not of the protected class more favorably." *Ates-Jackson v. Verizon Wireless (VAW) LLC*, 505 Fed. Appx. 871, 873 (11th Cir. 2013) (citing *Rice–Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842–43 (11th Cir. 2000)). The Eleventh Circuit recently held that the plaintiff and her proffered comparators must be "similarly situated in all material respects." *Lewis v. City of Union City, Ga*, 918 F.3d 1213, 1218 (11th Cir. 2019) (*en banc*). That requires that the plaintiff and her proffered

comparators have the same employment history, work responsibilities and superiors. *Id.* at 1227-28. Thus, individuals who have different job duties and histories are not proper comparators. *Horn v. United Parcel Serv.*, No. 308CV00953J25MCR, 2010 WL 11507196, at *5 (M.D. Fla. July 20, 2010) (citing *Johnson v. Auburn Univ.*, 193 Fed. Appx. 955, 956 (11th Cir. 2006)), *aff'd*, 433 Fed. Appx. 788 (11th Cir. 2011).

As noted above, Drs. Davidson-Schmich and Koger have different employment histories, work responsibilities and job duties. Therefore, the EEOC and Dr. Davidson-Schmich cannot establish a *prima facie* case of discrimination. Even if they could establish a *prima facie* case, the record evidence establishes a legitimate, non-discriminatory and non-pretextual explanation for the pay differentials at issue in this lawsuit. Therefore, the University is entitled to summary judgment on the Title VII claims, as well.

## CONCLUSION

As noted in its SUMF, the sum and substance of Dr. Davidson-Schmich's "evidence" of discrimination is that she and Dr. Koger are both Full Professors, he is male, he makes more money than she does and her case must have merit because it has been brought by the EEOC. Obviously, however, just because the EEOC initiated the action does not mean that the case has merit. For example, as the Second Circuit noted in the EEOC's lawsuit against the Port Authority, it "strains credulity to argue that [the] Port Authority, which does not set wages based on a lockstep scale, does not factor into its pay decisions the kind and quality of work its attorneys perform." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014). Further, accepting the EEOC's broad-brush approach in this case (which the Second Circuit already has rejected) "might permit lawsuits against any law firm – or, conceivably, any type of employer – that does not employ a lockstep pay model." *Id.* at 257. There is simply no basis to require any employer to pay its

16

employees in a lockstep model (or to require across-the-board raises every time a new hire is made), particularly where, as here, the differences between Drs. Davidson-Schmich and Koger (both in terms of their actual jobs and their credentials) are so striking. That is why "judicial determination of the relative economic value of unequal work may be particularly ill-advised in the context of faculty salaries in a private school." *Horner v. Mary Inst.*, 613 F.2d 706, 715 (8th Cir. 1980).

Neither the facts nor the law supports any claim that has been asserted against the University. Here, the undisputed record evidence establishes that gender has absolutely nothing to do with how the University compensates Drs. Davidson-Schmich or Koger. Rather, their compensation is based on the different jobs they each perform, the different skills they have and their individual worth (both to the University and in the open market). Respectfully, the time has come to end this expensive and wasteful exercise. Application of controlling legal principles to the undisputed factual record warrants summary judgment in favor of the University on all claims.

WHEREFORE, the University respectfully requests that the Court (1) enter summary judgment against the EEOC on all claims set forth in the operative Complaint (D.E. 1); (2) enter summary judgment against Dr. Davidson-Schmich on all claims set forth in the operative Intervenor Plaintiff's Complaint and Demand for Jury Trial (D.E. 13); (3) award the University its attorneys' fees and costs to the fullest extent permitted by applicable law (including, but not limited to, under Title VII); and (4) grant such further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Christopher M. Yannuzzi
      Eric D. Isicoff
      Florida Bar No. 372201
      Isicoff@irlaw.com
      Teresa Ragatz
      Florida Bar No. 545170
      Ragatz@irlaw.com
      Christopher M. Yannuzzi
      Florida Bar No. 92166
      Yannuzzi@irlaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF this 19th day of April, 2021, upon the following:

| U.S. Equal Employment Opportunity Commission, Miami District Office<br>Beatriz B. Andre<br>Ana C. Martinez<br>Miami Tower<br>100 SE 2nd Street, Suite 1500<br>Miami, Florida 33131<br>Tel. (305) 808-1753<br>Fax: (305) 808-1835<br>E-mail: beatriz.andre@eeoc.gov<br>E-mail: ana.martinez@eeoc.gov<br><br>*Counsel for Plaintiff, Equal Employment Opportunity Commission* | Amlong & Amlong, P.A.<br>Karen C. Amlong<br>Patricia L. Willis<br>500 Northeast Fourth Street<br>Fort Lauderdale, Florida 33138<br>Tel.: (954) 462-1983<br>Fax: (954) 523-3192<br>E-mail: KAmlong@TheAmlongFirm.com<br>E-mail: PWillis@TheAmlongFirm.com<br><br>*Counsel for Intervenor-Plaintiff, Louise Davidson-Schmich* |
|---|---|

By: /s/ Christopher M. Yannuzzi
      Christopher M. Yannuzzi

18