## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 1:19-cv-23131-SCOLA/LOUIS

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Plaintiff,

&

LOUISE DAVIDSON-SCHMICH,

Plaintiff-Intervenor,

vs.

UNIVERSITY OF MIAMI,

Defendant.

_____/

### JOINT PROPOSED JURY INSTRUCTIONS

Plaintiff, Equal Employment Opportunity Commission ("EEOC"); Intervenor-Plaintiff, Louise Davidson-Schmich ("Davidson-Schmich"); and Defendant, University of Miami (the "University"), by and through their undersigned counsel and pursuant to the Court's Orders dated October 1 and November 9, 2021 [DE 128, DE 144], hereby submit their Joint Proposed Jury Instructions, attached hereto. Pursuant to the Court's Amended Scheduling Order, if the Parties do not agree on a proposed instruction, the language proposed by Plaintiff and Plaintiff-Intervenor is underlined and the language proposed by Defendant is in bold-face. Language that the Parties agree to but deviates from the pattern jury instruction is italicized. Language that is set out in regular typeface means that all Parties agree on the proposed language.

Respectfully submitted this 19th day of November, 2021,

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission, Miami District Office<br>Miami Tower<br>100 SE 2nd Street, Suite 1500<br>Miami, Florida 33131<br>Tel.: (786) 648-5791<br>Fax: (305) 808-1835<br><br>By: /s/ Beatriz Biscardi Andre<br>      Beatriz Biscardi Andre<br>      Special S.D. Fla. ID: A5501597<br>      beatriz.andre@eeoc.gov<br>      Carmen Manrara Cartaya<br>      Florida Bar No. 73887<br>      carmen.cartaya@eeoc.gov<br><br>*Counsel for Plaintiff, Equal Employment Opportunity Commission* | Isicoff Ragatz<br>601 Brickell Key Drive, Suite 750<br>Miami, Florida 33131<br>Tel.: (305) 373-3232<br>Fax: (305) 373-3233<br><br>By: /s/ Christopher M. Yannuzzi<br>      Eric D. Isicoff<br>      Florida Bar No. 372201<br>      Isicoff@irlaw.com<br>      Teresa Ragatz<br>      Florida Bar No. 545170<br>      Ragatz@irlaw.com<br>      Christopher M. Yannuzzi<br>      Florida Bar No. 92166<br>      Yannuzzi@irlaw.com<br><br>*Counsel for Defendant, University of Miami* |
| Karen Coolman Amlong, P.A. d/b/a The Amlong Firm<br>500 Northeast Fourth Street<br>Fort Lauderdale, Florida 33301, Ste. 101<br>Tel.: (954) 462-1983<br>Fax: (954) 523-3192<br><br>By: /s/ Karen Coolman Amlong<br>      Karen Coolman Amlong<br>      Florida Bar No. 275565<br>      KAmlong@TheAmlongFirm.com<br>      Patricia L. Willis<br>      Florida Bar No. 294410<br>      PWillis@TheAmlongFirm.com<br><br>*Counsel for Intervenor-Plaintiff, Louise Davidson-Schmich* | |

**1.1**
**General Preliminary Instruction**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

<u>What is evidence</u>:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- · the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- · the witness's memory;

- · the witness's manner while testifying;

- · any interest the witness has in the outcome of the case;

- · any bias or prejudice the witness may have;

- · any other evidence that contradicts the witness's testimony;

- · the reasonableness of the witness's testimony in light of all the evidence; and

- · any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff*s*, *EEOC and Dr. Louise Davidson-Schmich*, claim that Defendant, *University of Miami, violated the Equal Pay Act. Specifically, they allege that Dr. Louise Davidson-Schmich, a Political Science Professor at the University of Miami, was paid less for [substantially equal / **equal**] work than Dr. Gregory Koger, her male comparator in the Political Science department. EEOC and Dr. Louise Davidson-Schmich further claim that the University violated Title VII of the Civil Rights Act of 1964 by paying Dr. Davidson-Schmich less because she is a woman.* The University of Miami denies those claims [*affirmative defense: and contends that Dr. Davidson-Schmich and Dr. Koger are not comparators and that factors other than sex justify the differences*

*in pay* / **and contends that Drs. Davidson-Schmich and Koger do not perform the same jobs at the University and, therefore, are not paid the same. Further, any pay differential is based on factors unrelated to sex.**

<u>Burden of proof</u>:

*EEOC and Dr. Davidson-Schmich have* the burden of proving *their* case by what the law calls a "preponderance of the evidence." That means *EEOC and Dr. Davidson-Schmich* must prove that, in light of all the evidence, what *they* claim is more likely true than not. So, if you could put the evidence favoring *EEOC and Dr. Davidson-Schmich* and the evidence favoring *University of Miami* on opposite sides of balancing scales, *EEOC and Dr. Davidson-Schmich* need to make the scales tip to *their* side. <u>*Stated another way, EEOC and Dr. Davidson-Schmich must show that at least 51% of the evidence presented favors EEOC and Dr. Davidson-Schmich.*</u> If *EEOC and Dr. Davidson-Schmich* fail to meet this burden, you must find in favor of *University of Miami.*

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," *the University of Miami* has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts *the University of Miami* must prove for any affirmative defense. After considering all the evidence, if you decide that *the University of Miami* has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

*In this case the EEOC and Dr. Davidson-Schmich claim that the University violated the* *Equal Pay Act and Title VII of the Civil Rights Act of 1964. These statutes both prohibit unequal* *pay in employment based on sex, but they each have different elements and burdens of proof.*

[Optional: [Name of defendant] has also brought claims for relief against [name of plaintiff] called counterclaims. On these claims, [name of defendant] has the same burden of proof that [name of plaintiff] has for [his/her/its] claims.]

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, *EEOC and Dr. Davidson-Schmich* will present *their* witnesses and ask them questions. After *EEOC and Dr. Davidson-Schmich* question the witness, *University of Miami* may ask the witness questions – this is called "cross-examining" the witness. Then *University of Miami* will present *its* witnesses, and *EEOC and Dr. Davidson-Schmich* may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

~~[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]~~

You'll then go to the jury room to deliberate.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 1.1: General Preliminary Instructions. *Nat'l Lime Ass'n v. Env't Prot. Agency*, 627 F.2d 416, 454 (D.C. Cir. 1980) ("But the standard of ordinary civil litigation, a preponderance of the evidence, demands only 51% certainty."); *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1357 (6th Cir. 1992) (preponderance of the evidence standard of proof "requires proving one's case by the greater weight of the evidence. Where the weight is equally divided between the plaintiff and the defendant, the party bearing the burden of proof must lose. Reduced to a percentage, this requires proof of one's case to at least 51 percent of the evidence.").

*Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) ("The plaintiff need not prove that the job held by her . . . comparator is identical to hers; she must demonstrate only that the skill, effort and responsibility required in the performance of the jobs are 'substantially equal.'"); *Edwards v. Fulton Cty., Ga., 509 F. App'x 882, 886* (11th Cir. 2013) ("the plaintiff need not show that his position and the comparator's are identical but rather that the two positions are 'substantially equal.'"); *Hankinson v. Thomas Cty. Sch. Sys.*, 257 F. App'x 199, 200 (11th Cir. 2007) ("The jobs need only be "substantially similar"; *Arrington v. Cobb Cty.*, 139 F.3d 865, 876 (11th Cir. 1998), as amended (May 28, 1998) ("To establish a prima facie case, a plaintiff need only demonstrate that the jobs at issue are substantially similar; a plaintiff does not have to show that the skills or qualifications of the actual male and female employees holding the positions are also substantially equivalent.").

*Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1020 (11th Cir. 1994) ("the elements and burdens of proof differ under the EPA and Title VII"); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1527 (11th Cir. 1992) (same).

**1.4 Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· **Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.**

**Authority:** ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 1.4

**1.5 Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**Authority: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 1.5**

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**2.2 Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**2.5 Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

**2.6 Use of Interrogatories**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**2.7 In-Trial Instructions on News Coverage**

Reports about this trial [or about this incident] may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**3.1 Introduction**

<u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved
### 3.2.3 The Duty to Follow Instructions – Government Entity or Agency Involved (Combined)

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation *or governmental agency* is involved as a party must not affect your decision in any way. A corporation */or governmental agency* and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation *or governmental agency* is involved, of course, it may act only through people as its employees; and, in general, a corporation *and/or governmental agency* is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company or governmental agency.

### 3.3 Consideration of Direct and Circumstantial Evidence;
     Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### 3.6.1 Expert Witness

*In this case, you heard the expert testimony of _____.*

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**3.6.2 Expert Witness – When Expert Fees Represent a Significant Portion of the Witness's Income**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

Authority: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.6.2

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the *EEOC and Dr. Davidson-Schmich* to prove every essential part of *their* claim[s] by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that *EEOC's and Dr. Davidson-Schmich's* claim*s are* more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against *EEOC and Dr. Davidson-Schmich*.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of *EEOC's and Dr. Davidson-Schmich's* claims by a preponderance of the evidence, you should find for the *University of Miami* as to that claim.

### 3.7.2 Responsibility for Proof – Affirmative Defense
####   Preponderance of the Evidence

In this case, the *University of Miami* asserts *an* ~~the~~ affirmative defense~~s~~ *to the Equal Pay Act claim. Specifically, the University of Miami asserts that the difference in pay between Dr. Davidson-Schmich and Dr. Koger is justified by market forces, experience, reputation, subfields, performance.* Even if the *EEOC and Dr. Davidson-Schmich* prove *their* claims by a preponderance of the evidence, the *University of Mami* can prevail *on its EPA claim* ~~in this case~~ if *it* proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the *University of Miami* does not have to disprove the *EEOC's and Dr. Davidson-Schmich's* claims, but if the *University of Miami* raises an affirmative defense, the only way *it* can prevail on that specific defense is if *it* proves that defense by a preponderance of the evidence.

**3.7.2 Responsibility for Proof – Affirmative Defense
       Preponderance of the Evidence**

In this case, the *University of Miami* asserts the affirmative defenses of (1) that any pay differential between Drs. Davidson-Schmich and Koger is based on any factor other than sex, including market forces, experience, reputation, impact in their respective fields and/or job performance; (2) that the EEOC's and Dr. Davidson-Schmich's claims are barred, in whole or in part, by the statute of limitations; that the EEOC's and Dr. Davidson-Schmich's claims are barred, in whole or in part, by Dr. Davidson-Schmich's failure to exhaust her administrate remedies; and (4) that Dr. Davidson-Schmich failed to mitigate her alleged damages. Even if the *EEOC and Dr. Davidson-Schmich* prove *their* claims by a preponderance of the evidence, the *University of Mami* can prevail proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the *University of Miami* does not have to disprove the *EEOC's and Dr. Davidson-Schmich's* claims, but if the *University of Miami* raises an affirmative defense, the only way *it* can prevail on that specific defense is if *it* proves that defense by a preponderance of the evidence.

**Authority:** ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.7.2

**4.13 Equal Pay Act – 29 U.S.C. §§ 206(d)(1) and (3)**

In this case, *EEOC and Dr. Davidson-Schmich* claim that *the University of Miami* violated a federal law called the Equal Pay Act. This law is designed to prevent sex-based wage discrimination by employers.

To succeed on *their* claim, *EEOC and Dr. Davidson-Schmich* must prove the following four facts by a preponderance of the evidence:

First: *The University of Miami* is an employer;

Second: *The University of Miami* has employed *Dr. Davidson-Schmich* and *Dr. Koger,* a *male* employee*, in jobs requiring [underline]substantially equal[/underline] / **equal]** skill, effort, and responsibility;

Third: The two jobs are performed under similar working conditions.

Fourth: *The University of Miami* paid *Dr. Davidson-Schmich* a lower wage than the similarly situated *male* employee*, Dr. Koger*.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues. I will now give you further instructions on these *four* elements. When evaluating whether *EEOC and Dr. Davidson-Schmich have* established these *four* elements, you must keep in mind that *EEOC and Dr. Davidson-Schmich do* not have to prove that *the University of Miami* meant to discriminate against *Dr. Davidson-Schmich* because she *is a woman*. In other words, *EEOC and Dr. Davidson-Schmich do* not have to prove *that the University had the* intent to discriminate.

The parties have agreed that *the University of Miami* is an employer subject to the Equal Pay Act's provisions. You should consider that a proven fact.

For the second element, you must consider whether *Dr. Davidson-Schmich*'s job required [underline]substantially equal[/underline] / **equal**] skill, effort, and responsibility as the *male* employee's job*, here the one done by Dr. Koger*. You should compare the jobs – not the individual employees holding those

jobs. The two jobs do not have to be identical. _Dr. Davidson-Schmich and Dr. Koger do not have to teach the same courses in order to meet the second element._ Rather, the law requires proof that the two jobs be ["substantially equal" / **equal]** in skill, effort, and responsibility. Insignificant or trivial differences can be disregarded. The important comparison is the two jobs' actual work or performance requirements – not the job titles, classifications, or descriptions.

To decide whether the jobs require ["substantially equal" / **equal]** "skill," you should consider factors such as the level of education, experience, training, and ability required to perform the two jobs.

Remember – you are comparing jobs, not employees, so the fact that the _male employee, Dr. Koger,_ has a qualification that _Dr. Davidson-Schmich_ does not have is only relevant if that qualification is necessary for [the _female_ employee's job / **Dr. Koger's job].**

To decide whether the jobs require ["substantially equal" / **equal]** "effort," you should compare the amount of physical and mental exertion needed to perform each job. You should weigh duties that result in mental or physical fatigue and emotional stress, or factors that alleviate fatigue and stress, to assess the relative effort involved. Equal effort does not mean that employees must use effort in the same way. If there is no real difference in the amount or degree of effort it takes to perform each job, the jobs require equal effort. But if one job requires additional tasks that take more time and effort, the two jobs do not require ["substantially equal" / **equal]** effort.

To decide whether the jobs involve ["substantially equal" / **equal]** "responsibility," you should consider the degree of accountability that each job requires. You may consider factors such as:

     (a) whether the employees are expected to direct or supervise the work of others;

     (b) whether the employees are authorized to represent _the University of Miami_ in dealing with customers, suppliers, or other third parties; and

(c) the potential consequences to *the University of Miami* of inadequate or improper performance of the jobs, which may include possible damage to valuable equipment, possible loss of business or productivity, and the possibility of incurring legal liability to third parties.

For the third element, *EEOC and Dr. Davidson-Schmich* must prove that the jobs are performed under similar working conditions. Note that the test here is whether the working conditions are "similar" – they do not need to be [substantially equal / **equal**]. To decide whether relative working conditions are similar, you should consider the physical surroundings or the environment in which the work is performed, including the elements to which employees may be exposed. You should also consider travel requirements as well as any work hazards, including the frequency and severity of any risks of injury.

For the fourth element, *EEOC and Dr. Davidson-Schmich* must prove that *the University of Miami* paid *her* a lower wage than *her male* counterpart. To determine this, you should consider all forms of compensation including wages, salary, profit sharing, expense accounts, bonuses, , hotel accommodations, and fringe benefits.

If you find that *EEOC and Dr. Davidson-Schmich* proved each element *they* must prove, you must decide whether *the University of Miami* has established *its* affirmative defense.

To establish *its* affirmative defense, *the University of Miami* must prove by a preponderance of the evidence that the difference in the amount of pay between the jobs was not because of *Dr. Davidson-Schmich*'s sex but was the result of [one of the following factors: market forces, experience, reputation, subfields, performance / **one or more of the following factors: market forces, experience, reputation, impact in their respective fields and/or job performance**. To establish this defense, *the University of Miami* must prove that *Dr. Davidson-Schmich*'s sex played no part in the difference in wages.

*EEOC and Dr. Davidson-Schmich* claim that the difference in pay was not the result of *these factors* and that *the University of Miami's* reason for the difference is only an excuse for paying higher wages to *men* for equal work.

If you find that *the University of Miami* has established its affirmative defense, your verdict must be in favor of *the University of Miami,* and you will not decide the issue of *Dr. Davidson-Schmich*'s damages. But if you find that *the University of Miami* has not established its affirmative defense, you must decide the damages issue.

[**Without Affirmative Defense:** If ~~you find that [name of plaintiff] has proved each element [he/she] must prove, you must decide the issue of [his/her] compensatory damages.~~]

When considering the issue of *Dr. Davidson-Schmich*'s ~~compensatory~~ damages, you should determine what amount, if any, has been proven by *EEOC and Dr. Davidson-Schmich* by a preponderance of the evidence as full, just and reasonable compensation for all of *Dr. Davidson-Schmich*'s damages, no more and no less.

You should consider the following element of damage, to the extent you find that *EEOC and Dr. Davidson-Schmich have* proved it by a preponderance of the evidence, and no others: the amount of *Dr. Davidson-Schmich*'s lost compensation. *Dr. Davidson-Schmich*'s lost compensation is the difference between the amount *the University of Miami* should have paid *Dr. Davidson-Schmich* and the amount *the University of Miami* actually paid *Dr. Davidson-Schmich*. Put another way, *Dr. Davidson-Schmich*'s lost compensation is the difference between *what Dr. Davidson-Schmich was paid (in both wages and benefits) and what Dr. Koger was paid (in both wages and benefits).* ~~compensation and the [average] compensation of the [male/female] employee[s] in [a] substantially equal job[s].~~

Compensatory damages *of lost compensation* are not allowed as a punishment and must not be imposed or increased to penalize *the University of Miami*. Also, compensatory damages *of lost compensation* must not be based on speculation or guesswork.

 *Dr. Davidson-Schmich* is entitled to recover lost compensation from the date of your verdict back to no more than two years before *she* filed this lawsuit on *July 29, 2019*, unless you find that *the University of Miami* "willfully violated" the Equal Pay Act.

If *the University of Miami* knew that *its* conduct violated the law, or acted in reckless disregard of that fact, then *its* conduct was willful. If *the University of Mami* did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard about whether the law prohibited *its* conduct, *its* conduct was not willful. If you find that *the University of Miami* willfully violated the Equal Pay Act, then *Dr. Davidson-Schmich is* entitled to recover lost compensation from the date of your verdict back to no more than three years before *EEOC* filed this lawsuit.

**Authority:**

Brock v. Georgia Sw. Coll., 765 F.2d 1026, 1033 (11th Cir. 1985) (plaintiff can meet its burden of going forward by showing that the teachers compared are in the same discipline and that their job is to teach classes to students in that discipline).

Third Circuit Pattern Jury Instructions 11.1.1. *See also Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019-20 (11th Cir. 1994) (reviewing differences between Title VII and EPA and explaining that Title VII requires intent to discrimination).

Third Circuit Pattern Jury Instruction 11.2.4. *See also Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362–63 (11th Cir. 2018) ("The employer must show that the factor of sex provided no basis for the wage differential. Further, the employer must show that none of the decision-makers . . . were influenced by sex bias.").

Third Circuit Pattern Jury Instruction 11.3.1 Equal Pay Act Damages — General Compensatory Damages (Noting no compensatory damages under Equal Pay Act); 29 U.S.C. § 216(b) (providing that recovery for an Equal Pay Act violation consists of the amount of underpayment and "an additional equal amount as liquidated damages."); Third

Circuit Pattern Jury Instruction 11.3.2 (lost wages measured by difference in what plaintiff earned and what comparator earned).

*Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) ("The plaintiff need not prove that the job held by her . . . comparator is identical to hers; she must demonstrate only that the skill, effort and responsibility required in the performance of the jobs are 'substantially equal.'"); *Edwards v. Fulton Cty., Ga., 509 F. App'x 882, 886* (11th Cir. 2013) ("the plaintiff need not show that his position and the comparator's are identical but rather that the two positions are 'substantially equal.'"); *Hankinson v. Thomas Cty. Sch. Sys.*, 257 F. App'x 199, 200 (11th Cir. 2007) ("The jobs need only be "substantially similar"); *Arrington v. Cobb Cty.*, 139 F.3d 865, 876 (11th Cir. 1998), as amended (May 28, 1998) ("To establish a prima facie case, a plaintiff need only demonstrate that the jobs at issue are substantially similar; a plaintiff does not have to show that the skills or qualifications of the actual male and female employees holding the positions are also substantially equivalent.").

**29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.")**

***Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (quoting *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973)) (For Plaintiffs to prevail under the Equal Pay Act, "the jobs involved must be virtually identical")**

***Schultz v. Bd. of Trs. of Univ. of W. Fla.*, No. 306CV442/RS/MD, 2007 WL 2066183, at \*19 (N.D. Fla. July 13, 2007) ("a professor's academic qualifications and expertise are inherently inseparable from the duties and skills required of the job" and "A university professor may only teach the subjects for which she possesses the requisite knowledge and expertise.")**

**4.5 Title VII – Civil Rights Act – Discrimination – Discharge or
Failure to Promote – Including "Same Decision" Defense
(Plaintiffs' Version)**

In this case, EEOC and Dr. Davidson-Schmich also claim that the University of Miami
violated the Federal Civil Rights statutes, Title VII of the Civil Rights Act of 1964, that prohibit
employers from discriminating against employees in the terms and conditions of employment
because of their sex. Specifically, EEOC and Dr. Davidson-Schmich claim that the University of
Miami paid Dr. Davidson-Schmich less compensation than she otherwise would have earned
because of her sex.

The University of Miami denies EEOC and Dr. Davidson-Schmich's claims and asserts
that it based Dr. Davidson-Schmich's compensation on market forces, experience, reputation,
subfields, and performance.

To succeed on their claim against the University of Miami, EEOC and Dr. Davison-Schmich
must prove each of the following facts by a preponderance of the evidence:

First: The University of Miami paid Dr. Davison-Schmich less money than she was would
have otherwise earned; and

Second: Dr. Davison-Schmich's sex was a motivating factor that prompted the University
of Miami to pay her less money.

In the verdict form that I will explain in a moment, you will be asked to answer questions about
these factual issues.

If you find that the University of Miami paid Dr. Davidson-Schmich less money than she
would have otherwise earned, you must decide whether Dr. Davidson-Schmich's sex was a
"motivating factor" in the decision. To prove that sex was a motivating factor in the University
of Miami's decision, EEOC and Dr. Davidson-Schmich do not have to prove that Dr. Davison-
Schmich's sex was the only reason that the University of Miami paid her less money. It is enough

*if EEOC and Dr. Davidson-Schmich prove that sex influenced the decision. If Dr. Davidson-Schmich's sex made a difference in the University of Miami's decision, you may find that it sex was a motivating factor in the decision.*

*The University of Miami claims that Dr. Davidson-Schmich's sex was not a motivating factor in the decision and that it based Dr. Davidson-Schmich's compensation on other factors. An employer may not discriminate against an employee because of the employee's sex, but the employer may make compensation decisions for any other reason, good or bad, fair or unfair. If you believe the University of Miami's reasons for setting Dr. Davidson-Schmich compensation, and you find that the University of Miami's decision was not motivated by Dr. Davidson-Schmich's sex, you must not second guess the University of Miami's decision, and you must not substitute your own judgment for the University of Miami's judgment – even if you disagree with it.*

*As I have explained, EEOC and Dr. Davidson-Schmich have the burden to prove that Dr. Davidson-Schmich's sex was a motivating factor in the University of Miami's decision to pay Dr. Davidson-Schmich less money. I have explained to you that evidence can be direct or circumstantial. To decide whether Dr. Davidson-Schmich's sex was a motivating factor in the University of Miami's decision to pay Dr. Davidson-Schmich less money, you may consider the circumstances of the University of Miami's decision. For example, you may consider whether you believe the reasons the University of Miami gave for the decision. If you do not believe the reasons it gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reasons for the decision.*

*[Cat's Paw (if applicable, see annotations): [Name of plaintiff] claims that [name of defendant]'s decision [to discharge/not to promote] [name of plaintiff] was based on the recommendation of [name of plaintiff]'s supervisor and that [name of plaintiff]'s*

~~[race/religion/sex/national origin] was a motivating factor in the supervisor's recommendation. If [name of plaintiff]'s supervisor recommended that [name of defendant] [discharge/decline to promote] [name of plaintiff] and [name of plaintiff]'s [race/religion/sex/national origin] motivated the supervisor's recommendation, the supervisor's recommendation can be a "motivating factor" behind [name of defendant]'s employment decision—even if the supervisor did not make the ultimate decision to [discharge/decline to promote] [name of plaintiff].~~

~~But [name of plaintiff]'s [race/religion/sex/national origin] can be a motivating factor in [name of defendant]'s decision only if you find that [name of plaintiff] has proved each of the following by a preponderance of the evidence:~~

~~(a) the supervisor acted with the intent to make [name of defendant] [discharge/deny a promotion to] [name of plaintiff] (which means that the supervisor wanted [name of defendant] to [discharge/deny a promotion to] [name of plaintiff]), or the supervisor believed that [his/her] actions would cause [name of defendant] [to discharge/deny a promotion to] [name of plaintiff];~~

~~(b)[name of plaintiff]'s [race/religion/sex/national origin] was a motivating factor behind the supervisor's actions; and~~

~~(c) there was a direct relationship between the supervisor's actions and [name of plaintiff]'s [discharge/denial of promotion].]~~

~~[Including Affirmative Defense (if applicable, see annotations): If you find in [name of plaintiff]'s favor for each fact [he/she] must prove, you must decide whether [name of defendant] has shown by a preponderance of the evidence that [he/she/it] would have [discharged/not promoted] [name of plaintiff] even if [name of defendant] had not taken [name of plaintiff]'s [race/religion/sex/national origin] into account. If you find that [name of plaintiff] would [have been discharged/not have been promoted] for reasons other than [his/her] [race/religion/sex/national origin], you must make that finding in your verdict.~~

If you find for EEOC and Dr. Davidson-Schmich and against the University of Miami on this defense, you must consider Dr. Davidson-Schmich ~~compensatory~~ damages. When considering the issue of Dr. Davidson-Schmich's ~~compensatory~~ damages, you should determine what amount, if any, has been proven by EEOC and Dr. Davidson-Schmich by a preponderance of the evidence as full, just and reasonable compensation for all of Dr. Davidson-Schmich damages as a result of the University of Miami's compensation decision, no more and no less.

You may first consider Dr. Davidson-Schmich's back pay, or lost compensation, to the extent you find that EEOC and Dr. Davidson-Schmich have proved them by a preponderance of

*the evidence, and no others: the difference between the amount the University of Miami should have paid Dr. Davidson-Schmich and the amount the University of Miami actually paid Dr. Davidson-Schmich from June 2016 to the present.*

*You may next consider Compensatory Damages. Compensatory Damages are not allowed as a punishment and must not be imposed or increased to penalize the University of Miami. Also, compensatory damages must not be based on speculation or guesswork. You should consider the following elements of damage, to the extent you find that EEOC and Dr. Davidson-Schmich have proved them by a preponderance of the evidence, and no others:*

*(a) net lost wages and benefits from the date of [discharge/denied promotion] to the date of your verdict; and*

*(b) emotional pain and mental anguish.*

*To determine whether and how much Dr. Davidson-Schmich should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Dr. Davidson-Schmich does not have to introduce evidence of a monetary value for intangible things like mental anguish. You will determine what amount fairly compensates her for her claims. There is no exact standard to apply, but the award should be fair in light of the evidence.*

*[**Mitigation of Damages:** You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires [name of plaintiff] to be reasonably diligent in seeking substantially equivalent employment to the position [he] [she] held with [name of defendant]. To prove that [name of plaintiff] failed to mitigate damages, [name of defendant] must prove by a preponderance of the evidence that: (1) work comparable to the*

*position [name of plaintiff] held with [name of defendant] was available, and (2) [name of plaintiff] did not make reasonably diligent efforts to obtain it. If, however, [name of defendant] shows that [name of plaintiff] did not make reasonable efforts to obtain any work, then [name of defendant] does not have to prove that comparable work was available.*

*If you find that [name of defendant] proved by a preponderance of the evidence that [name of plaintiff] failed to mitigate damages, then you should reduce the amount of [name of plaintiff]'s damages by the amount that could have been reasonably realized if [name of plaintiff] had taken advantage of an opportunity for substantially equivalent employment.]*

*EEOC and Dr. Davidson-Schmich also asks you to award punitive damages. The purpose of punitive damages is not to compensate Dr. Davidson-Schmich but, instead, to punish the University of Miami for wrongful conduct and to deter similar wrongful conduct. You will only reach the issue of punitive damages if you find for EEOC and Dr. Davidson-Schmich and award [him] [her] compensatory damages.*

*To be entitled to an award of punitive damages, EEOC and Dr. Davidson-Schmich must prove by a preponderance of the evidence that the University of Miami acted with either malice or with reckless indifference toward Dr. Davidson-Schmich's federally protected rights. Specifically, EEOC and Dr. Davidson-Schmich must show that an employee of the University of Miami, acting in a managerial capacity, either acted with malice or with reckless indifference to Dr. Davidson-Schmich's federally protected rights.*

*There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority the University of Miami gave the employee and the amount of discretion that the employee has in what is done and how it is accomplished.*

*To show that the University of Miami acted with malice, EEOC and Dr. Davidson-Schmich must show that an employee acting in a managerial capacity knew that federal law prohibits discrimination and discriminated against Dr. Davidson-Schmich anyway. To show that the University of Miami acted with reckless indifference to Dr. Davidson-Schmich's federally protected rights, EEOC and Dr. Davidson-Schmich must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law. Either malice or reckless indifference is sufficient to entitle Dr. Davidson-Schmich to an award of punitive damages; Dr. Davidson-Schmich need not prove both.*

*An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.*

*There is no single factor that determines whether the University of Miami acted with malice or with reckless indifference to Dr. Davidson-Schmich's federally protected rights. In determining whether to award punitive damages, you may consider factors such as: ~~[(1) whether the University of Miami engaged in a pattern of discrimination toward its employees]; [(2) whether the University of Miami acted spitefully or malevolently];~~*

*[(3) whether the University of Miami showed a blatant disregard for civil legal obligations];*

*[(4) whether the University of Miami failed to investigate reports of discrimination];*

> *[(5) whether the University of Miami failed to take corrective action concerning*
>
> *discriminatory acts or comments by its employees]; and*
>
> *[(6) whether the person accused of discrimination was included in the employer's*
>
> *decision making process concerning Dr. Davidson-Schmich's compensation.]*

*If you find that punitive damages should be assessed against the University of Miami, you may*

*consider the evidence regarding the University of Miami's financial resources in ~~fixing~~*

*determining the amount of such damages.*

**Authority**: *Coleman v. City of Omaha*, 714 F.2d 804, 808 (8th Cir. 1983) (holding, as part of mitigation analysis, that "Coleman cannot be required to move from his home"); *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1319 (D.C.Cir. 1971) (employee need not accept employment that is "located an unreasonable distance from his home"); *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, (4th Cir. 1983) ("The long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home."); *Hayes v. Skywest Airlines, Inc.*, No. 19-1296, 2021 WL 4097766, *17 (10th Cir. Sept. 9, 2021) (" 'Substantial equivalence' involves more than just similar work—it considers such factors as pay and benefits, promotional opportunities, job responsibilities, working conditions, comparable hours, distance from home, dangerousness, and comparability of status.").

**4.5 Title VII – Civil Rights Act – Discrimination – Discharge or
Failure to Promote – Including "Same Decision" Defense
(Defendant's Version)**

In this case, EEOC and Dr. Davidson-Schmich also claim that the University of

Miami violated Title VII of the Civil Rights Act of 1964, which prohibits employers from

discriminating against employees in the terms and conditions of employment because of

their sex. Specifically, EEOC and Dr. Davidson-Schmich claim that the University of

Miami paid Dr. Davidson-Schmich less compensation than she otherwise would have

earned because of her sex.

The University of Miami denies EEOC and Dr. Davidson-Schmich's claims and

asserts that it based Dr. Davidson-Schmich's compensation on market forces, experience,

reputation, impact in their respective fields and/or job performance.

To succeed on their claim against the University of Miami, EEOC and Dr.

Davidson-Schmich must prove each of the following facts by a preponderance of the

evidence:

**First:** The University of Miami paid Dr. Davidson-Schmich less money than she
would have otherwise earned if she were a man; and

**Second:** Dr. Davidson-Schmich's sex was a motivating factor that prompted the
University of Miami to pay her less money.

In the verdict form that I will explain in a moment, you will be asked to answer questions

about these factual issues.

If you find that the University of Miami paid Dr. Davidson-Schmich less money than

she would have otherwise earned if she were a man, you must decide whether Dr.

Davidson-Schmich's sex was a "motivating factor" in the decision. To prove that sex was a

motivating factor in the University of Miami's decision, EEOC and Dr. Davidson-Schmich

do not have to prove that Dr. Davidson-Schmich's sex was the only reason that the University of Miami paid her less money. It is enough if EEOC and Dr. Davidson-Schmich prove that sex influenced the decision. If Dr. Davidson-Schmich's sex made a difference in the University of Miami's decision, you may find that sex was a motivating factor in the decision.

The University of Miami claims that Dr. Davidson-Schmich's sex was not a motivating factor in the decision and that it based Dr. Davidson-Schmich's compensation on other factors, including market forces, experience, reputation, impact in her field and/or job performance. An employer may not discriminate against an employee because of the employee's sex, but the employer may make compensation decisions for any other reason, good or bad, fair or unfair. If you believe the University of Miami's reasons for setting Dr. Davidson-Schmich compensation, and you find that the University of Miami's decision was not motivated by Dr. Davidson-Schmich's sex, you must not second guess the University of Miami's decision, and you must not substitute your own judgment for the University of Miami's judgment – even if you disagree with it.

As I have explained, EEOC and Dr. Davidson-Schmich have the burden to prove that Dr. Davidson-Schmich's sex was a motivating factor in the University of Miami's decision to pay Dr. Davidson-Schmich less money. I have explained to you that evidence can be direct or circumstantial. To decide whether Dr. Davidson-Schmich's sex was a motivating factor in the University of Miami's decision to pay Dr. Davidson-Schmich less money, you may consider the circumstances of the University of Miami's decision. For example, you may consider whether you believe the reasons the University of Miami gave for the decision. If you do not believe the reasons it gave for the decision, you may consider

whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reasons for the decision.

If you find for EEOC and Dr. Davidson-Schmich and against the University of Miami, you must consider Dr. Davidson-Schmich's compensatory damages. When considering the issue of Dr. Davidson-Schmich's compensatory damages, you should determine what amount, if any, has been proven by EEOC and Dr. Davidson-Schmich by a preponderance of the evidence as full, just and reasonable compensation for all of Dr. Davidson-Schmich's damages as a result of the University of Miami's compensation decisions, no more and no less. Compensatory Damages are not allowed as a punishment and must not be imposed or increased to penalize the University of Miami. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that EEOC and Dr. Davidson-Schmich have proved them by a preponderance of the evidence, and no others:

(a) net lost wages and benefits from August 9, 2017 [300 days prior to when Dr. Davidson-Schmich filed her EEOC Charge]; and

(b) emotional pain and mental anguish.

To determine whether and how much Dr. Davidson-Schmich should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Dr. Davidson-Schmich does not have to introduce evidence of a monetary value for intangible things like mental anguish. However, you may consider whether Dr. Davidson-Schmich sought medical or psychological treatment for any alleged

mental anguish. You will determine what amount fairly compensates her for her claims. There is no exact standard to apply, but the award should be fair in light of the evidence. [NOTE: The instructions on emotional distress damages only should be included if the University's pending Motion in *Limine* (DE 124) on this issue is denied.]

**Mitigation of Damages:** You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Dr. Davidson-Schmich to be reasonably diligent in seeking substantially equivalent employment to her position with the University of Miami and to demonstrate that such she would have been hired for that substantially equivalent position and would have earned more in that substantially equivalent position.

If you find that the University of Miami proved by a preponderance of the evidence that Dr. Davidson-Schmich failed to mitigate damages, then you should reduce the amount of Dr. Davidson-Schmich's damages by the amount that could have been reasonably realized if she had taken advantage of an opportunity for substantially equivalent employment.

[NOTE: The University believes that the issue of punitive damages should be bifurcated. This instruction only should be given if the jury finds for Plaintiffs on the Title VII claim]

EEOC and Dr. Davidson-Schmich also asks you to award punitive damages. The purpose of punitive damages is not to compensate Dr. Davidson-Schmich but, instead, to punish the University of Miami for wrongful conduct and to deter similar wrongful

conduct. You will only reach the issue of punitive damages if you find for Dr. Davidson-Schmich and award her compensatory damages.

To be entitled to an award of punitive damages, Dr. Davidson-Schmich must prove by a preponderance of the evidence that the University of Miami acted with either malice or with reckless indifference toward Dr. Davidson-Schmich's federally protected rights. Specifically, Dr. Davidson-Schmich must show that an employee of the University of Miami, acting in a managerial capacity, either acted with malice or with reckless indifference to Dr. Davidson-Schmich's federally protected rights.

There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority the University of Miami gave the employee and the amount of discretion that the employee has in what is done and how it is accomplished.

To show that the University of Miami acted with malice, Dr. Davidson-Schmich must show that an employee acting in a managerial capacity knew that federal law prohibits discrimination and discriminated against Dr. Davidson-Schmich anyway. To show that the University of Miami acted with reckless indifference to Dr. Davidson-Schmich's federally protected rights, Dr. Davidson-Schmich must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law. Either malice or reckless indifference is sufficient to entitle Dr. Davidson-Schmich to an award of punitive damages; Dr. Davidson-Schmich need not prove both.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are

contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

There is no single factor that determines whether the University of Miami acted with malice or with reckless indifference to Dr. Davidson-Schmich's federally protected rights. In determining whether to award punitive damages, you may consider factors such as:

(1) whether the University of Miami engaged in a pattern of discrimination toward its employees;

(2) whether the University of Miami acted spitefully or malevolently;

(3) whether the University of Miami showed a blatant disregard for civil legal obligations;

(4) whether the University of Miami failed to investigate reports of discrimination;

(5) whether the University of Miami failed to take corrective action concerning discriminatory acts or comments by its employees; and

(6) whether the person accused of discrimination was included in the employer's decision-making process concerning Dr. Davidson-Schmich's compensation.

If you find that punitive damages should be assessed against the University of Miami, you may consider the evidence regarding the University of Miami's financial resources in determining the amount of such damages.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 4.5;

**Court's Summary Judgment Order (DE 126 at 24-25)**

*Wilbur v. Corr. Services Corp.*, 393 F.3d 1192, 1205 (11th Cir. 2004) (A jury's "failure to find any legal basis for imposing civil liability on [a Title VII defendant] necessarily precludes any award of punitive damages.") (citing *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 600 (4th Cir. 1996) (commenting that a finding of liability and compensatory damage is a prerequisite to finding punitive damages))

*Chang v. Univ. of R.I.*, 606 F. Supp. 1161, 1274 (D.R.I. 1985) (duty of mitigation "should apply equally to a person who retains her employment."

*Perry v. Schumacher Grp. of La.*, No. 2:13-CV-36-FTM-29DNF, 2020 WL 6938391, at *4 (M.D. Fla. Nov. 25, 2020) (denying summary judgment and collecting cases for the proposition that "the jury will be required to determine the reasonableness of plaintiff's mitigation efforts"); *E.E.O.C. v. W. Customer Mgmt. Grp., LLC*, 899 F. Supp. 2d 1241, 1258 (N.D. Fla. 2012) (denying EEOC's motion for partial summary judgment because of fact questions regarding the sufficiency of plaintiff's job search); *Voss v. City of Key W., Fla.*, 24 F. Supp. 3d 1228, 1232–33 (S.D. Fla. 2014) (denying plaintiff's motion for summary judgment and finding that whether plaintiff exerted a "reasonable effort to mitigate her damages is similarly a question of fact for the jury").

### 3.8.1 Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**2.8 Civil *Allen* Charge**

**Members of the jury:**

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

**Authority:** ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.8