United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, Plaintiff, | ) ) ) | |
| & | ) ) | |
| Louise Davidson-Schmich, Intervenor-Plaintiff, | ) ) ) | Civil Action No. 19-23131-Civ-Scola |
| v. | ) ) | |
| University of Miami, Defendant. | ) | |

## Partial Order on Defendant's Motion in Limine

The Equal Employment Opportunity Commission ("E.E.O.C.") and Dr. Louise Davidson-Schmich, a professor at the University of Miami, instituted this action against Defendant University of Miami (the "University") alleging unequal pay allegations on account of gender. The Plaintiffs aver that the University unjustly paid Dr. Davidson-Schmich's male colleagues, including Dr. Gregory Kroger, more than her in violation of federal laws. (*See* Compl. ECF No. 1).

This matter comes before the Court on the University's motion in limine (Def. Mot., ECF No. 124). In it, the University asks the Court to preclude, among others, expert evidence from Dr. Erin George, an economist employed by the E.E.O.C. This order will address the University's motion only with respect to its challenge against Dr. George. The Court defers ruling on the remaining issues in the University's motion.

For the reasons below, the Court **denies, in part, the University's motion (ECF No. 124)**. Specifically, the Court denies the University's request to exclude Dr. George's expert testimony.

### 1. Background

Dr. George received a Ph.D. in economics from American University. (George Dep. 92, ECF No.124-1). She has taught economics courses at the collegiate level and has published several articles and book chapters on labor economics and applied microeconomics. (*Id.*) As part of her job at the E.E.O.C., Dr. George "provide[s] expert analysis on cases and charges alleging employment discrimination" and "expert analyses of economic damages." (*Id.*) In this case, E.E.O.C. counsel asked Dr. George to calculate back pay for Dr.

Davidson-Schmich and to make two assumptions in doing so: (1) that Dr. Davidson-Schmich should have earned the same salary as Dr. Kroger when he was hired by the University in 2007, and (2) that Dr. Davidson-Schmich would have received the same percentage pay raises each year that she actually received, which percentage pay raises would be applied to the salary assumed under (1). (Def. Mot. 3.)

Those assumptions serve as the basis for the University's challenge. It argues that these two assumptions are faulty for reasons such as Dr. George's failure to analyze any information about Dr. Kroger beyond his starting salary. (Def. Mot. 3.) The University also says that these assumptions inappropriately allow Dr. Davidson-Schmich to "double dip" by "receiving market raises twice (once to bring up her salary to Dr. Kroger's in 2007, and again over the years with various percentage raises)." (Def. Mot. 8.)

Dr. George summarized her calculations in a report, which estimates Dr. Davidson-Schmich's back pay to be $62,825.71 if measured as of June 2017 or $78,989.38 if measured as of June 2016. (George Dep. 92.) In that report, Dr. George lists out the 19 documents she considered (George Dep. 99), and notes that her "estimates related to retirement contributions are conservative." (George Dep. 96.) During her deposition, Dr. George testified that she confirmed Dr. Davidson-Schmich's yearly salary, Dr. Koger's starting salary, and Dr. Davidson-Schmich's retirement contributions. (George Dep. 28.)

### 2. Legal Standard

Expert testimony is admissible under Fed. R. Evid. 702 "if (1) the expert is qualified to testify regarding the subject of the testimony;[1] (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*;[2] and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib.*, LLC, 766 F.3d 1296, 1304 (11th Cir. 2014) (cleaned up). These requirements are summarized as the qualification, reliability, and

---

[1] Independent of the fact that the University does not seem to contest Dr. George's qualification, the Court finds based on the record and submissions before it, that the E.E.O.C. has shown Dr. George to be qualified as an expert for purposes of calculating the back pay allegedly owed to Dr. Davidson-Schmich.

[2] The University does not state which factor(s) from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Dr. George's opinion allegedly fails. That is not fatal to its challenge. Although the *Daubert* factors are instrumental, "the Court has emphasized that [they] are not exhaustive and are meant to be applied in a 'flexible' manner." *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

helpfulness elements in our Circuit. *Catalina Rental Apartments, Inc. v. Pac. Ins. Co.*, No. 06-20532 CIV, 2007 WL 1970808, at *2 (S.D. Fla. July 3, 2007) (Torres, Mag. J.).

### 3. Analysis

The University argues that Dr. George's back pay calculations of the monies allegedly owed to Dr. Davidson-Schmich should not be admitted under Rule 702. (Def. Mot. 6-10.) First, the University argues that Dr. George's calculations are unreliable in that they improperly "parrot" the E.E.O.C.'s position in this case. (Def. Reply 2, ECF No. 133.) Second, the University argues that Dr. George's calculations amount to little beyond simple arithmetic that a jury would be able to perform and that, as such, her testimony would be unhelpful to them.

### A. Unreliability

The University argues that Dr. George's calculations are unreliable because the assumptions underlying them were provided to Dr. George by counsel for the E.E.O.C. (Def. Mot. 6.) This paired with the fact that Dr. George herself is an employee of the E.E.O.C., according to the University, makes Dr. George's testimony nothing more than mere parroting of the Plaintiffs' central allegations. (Def. Mot. 6.) The Court disagrees.

#### (1) *The assumptions underlying Dr. George's opinion*

"Florida federal courts permit expert opinion testimony on damages even though the opinions are based on assumptions if there is a factual foundation for the assumptions." *McSwain v. World Fuel Servs. Corp.*, No. 1:20-CV-21203, 2021 WL 2682269, at *4 (S.D. Fla. June 30, 2021) (Cooke, J.). Thus, the inquiry is whether there is a factual basis for the assumptions underlying Dr. George's opinion that render it reliable.

The Court finds that there is. The record includes statements by University administrators noting that Dr. Davidson-Schmich was "grossly underpaid" and that the University's "annual allocations for merit and market adjustments have fallen short of [its] ability to provide [Dr. Davidson-Schmich] with the salary she deserves." (E.E.O.C.'s Mot. Summ. J. Exs. 18, 30, ECF Nos. 104-18, 104-30.) Beyond that, the University created two ad hoc committees to analyze salary differentials between male and female faculty, which concluded that men generally out-earned women by tens of thousands of dollars both in 2016 ($32,889.60 average pay gap) and 2018 ($28,060 average pay gap), which is part of the time period relevant to this suit. (E.E.O.C.'s Mot. Summ. J. Ex.

21, 26, ECF Nos. 104-21, 104-26.) In fact, the 2016 study recommended that the University provide a salary equity raise to women lecturers. (E.E.O.C.'s Mot. Summ. J. Ex. 26.)

To argue that Dr. George's purportedly "improper foundation warrants exclusion," (Def. Mot. 8.), the University relies heavily on *Goldberg v. Fla. Int'l Univ. Bd. of Trustees*, where, unlike here, the proffered expert conducted "no independent research, nor any verification or critical assessment of the data provided to him." No. 18-20813-CIV, 2019 WL 692780, at *2 (S.D. Fla. Feb. 7, 2019) (Otazo-Reyes, Mag. J.). In fact, the proffered expert there did not even know who had drafted portions of his expert disclosure. *Id.* ("Mr. Egort testified that he drafted pages 5 through 8 of his expert disclosure . . . and that he did not know who drafted the remaining pages."). Here, Dr. George verified Dr. Davidson-Schmich's pay data and assessed it against factors such as market rates of return in noting potential different calculation outcomes. (*See* George Dep. 46:19-50:13, 95.)

The University also relies on *United States v. Arthur*, but the Court there found it had no basis "to analyze what methodology [the proffered expert] used to reach his conclusions so as to determine whether they [were] sufficiently reliable to be admitted." No. 10-20753-CR, 2011 WL 3844090, at *4 (S.D. Fla. Aug. 29, 2011) (Seitz, J.), *aff'd sub nom. United States v. Fagan*, 518 F. App'x 749 (11th Cir. 2013). The University's reliance on *McClain v. Metabolife Int'l, Inc.*, is also misplaced. 401 F.3d 1233 (11th Cir. 2005). There, the court stated it had no basis upon which to assess the reliability of the expert's reliance on an analogy between two chemical compounds to conclude the toxicity of a nutritional supplement containing one of them. *Id.* at 1244-45.

Although the University represents that Dr. George's calculations are inaccurate because they "double dip" by assuming a starting salary equal to Dr. Kroger's and yearly rate increases that matched Dr. Davidson-Schmich's, the purported accuracy of an expert's assumptions is not the driving factor in determining admissibility. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011) (admitting expert testimony characterized by the challenging party as being based on "incorrect" assumptions); *Bahr v. NCL (Bahamas) Ltd.*, No. 19-CV-22973, 2021 WL 4845789, at *6 (S.D. Fla. Oct. 18, 2021), *clarified on denial of reconsideration*, No. 19-CV-22973, 2022 WL 19258 (S.D. Fla. Jan. 3, 2022) (Bloom, J.) (admitting expert testimony based on fictitious assumptions and focusing the admissibility inquiry on whether there is "some factual basis" for the expert's opinion). Nor is the fact that an expert assumes a party's facts as true dispositive of the admissibility of that expert's testimony. *See Rossi v. Darden*, No. 16-21199-CIV, 2017 WL 2129429, at *9-*10 (S.D. Fla. May 17, 2017) (Altonaga, J.); *Acosta v. Novamed Surgery Ctr. of*

*Orlando, LLC*, No. 612CV985ORL28KRS, 2014 WL 12872615, at *3 (M.D. Fla. May 8, 2014).

The University's disagreements with Dr. George's calculations go to the weight and credibility of her opinion, which may be tested through cross-examination at trial. They do not limit the admissibility of Dr. George's testimony. *See Bahr*, 2021 WL 4845789 at *6 ("[A]n objection based upon an expert opinion's reliance on incorrect assumptions attacks the weight and persuasiveness of the testimony, not its admissibility."); *see also Rosenfeld*, 645 F. 3d at 1193 ("[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.") (cleaned up).

### (2) *Dr. George's employment with the E.E.O.C.*

Second, Dr. George's employment with the E.E.O.C. does not alone render her testimony unreliable under Rule 702. As the E.E.O.C. points out, E.E.O.C. employees have provided expert testimony before courts throughout the nation (*see* E.E.O.C. Resp. 3, ECF No. 129) and Dr. George has been disclosed as an expert witness in multiple cases. (George Dep.14:4-8.) Any bias that would result from Dr. George's being employed by the E.E.O.C. goes again to the weight and credibility of her testimony, not its admissibility. *Adams v. Lab'y Corp. of Am.*, 760 F.3d 1322, 1332-33 (11th Cir. 2014) ("Bias in an expert witness's testimony is usually a credibility issue for the jury . . . [Rule 702] requires courts to determine that the expert's method is reliable, not that it is free of any possibility of bias.").

For these reasons, the Court finds that Dr. George's testimony concerning the calculations of the back pay owed to Dr. Davidson-Schmich is reliable.

### B. Helpfulness to the Jury

Next, the Court finds Dr. George's testimony would help a jury understand how to calculate damages. "The Eleventh Circuit has determined that the helpfulness prong turns on whether the proffered testimony concerns matters that are beyond the understanding of the average lay person." *Bahr*, 2021 WL 4845789, at *14 (citing *Edwards v. Shanley*, 580 App'x 816, 823 (11th Cir. 2014)). The University argues that Dr. George's calculations are mere "simple, arithmetic calculations of salaries." (Def. Mot. 9-10.)

However, Dr. George's calculations are necessarily the byproduct of her expertise. For example, Dr. George chose to go with a "conservative approach" in calculating retirement back pay. (*See* George Dep. 95.) Specifically, Dr.

George chose to not adjust her retirement backpay calculations to reflect the compounding effect of investments' rates of return over time. (*See* George Dep. 95.) The fact that Dr. George would purposefully employ an approach she characterizes as "conservative" in certain aspects of her calculations indicates that others, including lay jurors, may make calculation assumptions that Dr. George consciously did not in exercising her expertise. Additionally, Dr. George accounted for interest based on the Internal Revenue Service's rate in her calculations, which she represented to be the practice among economists in calculating back pay, but which may very well not be within a lay juror's considerations. (George Dep. 49:19-50:14.)

That Dr. George's calculations are admittedly attainable through arithmetic is not dispositive. *See City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 566 (11th Cir. 1998) (finding an expert's compilation of data and testimony concerning damages admissible even though they were "the products of simple arithmetic and algebra . . . ."). Her calculations necessarily encompass her professional assumptions and as such go beyond the nature of truly simplistic calculations that an average person could readily perform. *Cf. Rossi*, 2017 WL 2129429 (excluding an expert's opinion that centered on identifying numbers and inputting them into a "simple division equation.").

### 3. Conclusion

For the above reasons, the Court finds that Dr. George's testimony concerning the back pay allegedly owed to Dr. Davidson-Schmich would be the byproduct of a reliable methodology and that such testimony would be helpful to a jury. The Court disagrees with the University that admitting Dr. George's expert testimony would be more prejudicial than probative.

Accordingly, Dr. George may be qualified as an expert under Rule 702 for the purpose of calculating the back pay allegedly owed to Dr. Davidson-Schmich. The University's **motion in limine (ECF No. 124) is denied with respect to precluding Dr. George's testimony.**

**Done and ordered** in chambers at Miami, Florida on February 18, 2022.

Robert N. Scola, Jr.
United States District Judge