**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.: 1:19-CV-23131-SCOLA/LOUIS**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,
and

LOUISE DAVIDSON-SCHMICH,

    Intervenor-Plaintiff,

v.

UNIVERSITY OF MIAMI,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR DIRECTED VERDICT
OR JUDGMENT AS A MATTER OF LAW**

Defendant, University of Miami (the "University"), pursuant to Federal Rule of Civil Procedure 50(a), moves for entry of a directed verdict, or judgment as a matter of law, on all claims asserted against it by Plaintiff, Equal Employment Opportunity Commission ("EEOC"), and Intervenor-Plaintiff, Louise Davidson-Schmich ("Dr. Davidson-Schmich") (the EEOC and Dr. Davidson-Schmich are collectively referred to as "Plaintiffs").[1] The University respectfully submits that there exists no disputed issue of material fact and that it is entitled to a directed verdict, or judgment as a matter of law, on Count I (violation of the Equal Pay Act, §§ 6(d)(1) and 15(a)(2)

---

[1] Although the term "directed verdict" continues routinely to be used, "Rule 50(a) was amended in 1991 to replace the term 'directed verdict' with 'judgment as a matter of law.'" *U.S. v. One 28 Foot Contender Motor* Vessel, 240 F. Appx. 842, 843 (11th Cir. 2007) (referring to Fed. R. Civ. P. 50 (1991 Amendments).

of the Fair Labor Standards Act and §§ 206(d)(1) and 215(a)(2)); and Count II (violation of § 703(a)(1) of Title VII) of Plaintiffs' Complaints.[2]

## MEMORANDUM OF LAW

**I.   LEGAL STANDARD FOR A DIRECTED VERDICT/JUDGMENT AS A MATTER OF LAW**

A court may grant a motion for judgment as a matter of law on an issue if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue." Fed. R. Civ. P. 50(a). "A district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Ore v. Tricam Indus., Inc.*, No. 14-60269-Civ-Scola, 2017 WL 6597517, at *1 (S.D. Fla. Oct. 16, 2017) (granting defendants' motion for directed verdict on damages) (*citing Pickett v. Tyson Fresh Meats, Inc*., 420 F.3d 1272, 1278 (11th Cir. 2005)).

"Although courts should 'look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts.'" *Ore*, 2017 WL 6597517, at *1 (*citing Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000)). *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446 (11th Cir. 1997) ("A mere scintilla of evidence is not sufficient to support a jury verdict."). The "standard for judgment as a matter of law . . . mirrors the standard for summary judgment under Rule 56. Thus, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations

---

[2] The EEOC filed its Complaint on July 29, 2019, and Dr. Davidson-Schmich filed her Complaint on October 2, 2019. [DE 1; 13.] The Complaints assert virtually identical facts and causes of action.

or weighing any evidence." *Ore*, at *1, *citing Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000) (citations omitted).

The University respectfully submits that Plaintiffs have failed to adduce evidence supporting the essential elements of their claims and on which they bear the burden of proof. Additionally, Plaintiffs have failed to adduce evidence to rebut the evidence in the record that establishes the University's affirmative defenses to the claims asserted. Thus, there is no reasonable evidence in the trial record upon which the Jury could legally predicate a verdict in favor of Plaintiffs on either claim they have asserted. Accordingly, a directed verdict, or judgment as a matter of law, properly should be entered in favor of the University.

## II. THE UNIVERSITY IS ENTITLED TO A DIRECTED VERDICT ON COUNT I OF PLAINTIFFS' COMPLAINTS FOR VIOLATION OF THE EQUAL PAY ACT

Plaintiffs' claim, in Count I of their Complaints, that the University violated the Equal Pay Act ("EPA") because it paid different wages to Dr. Davidson-Schmich and Dr. Gregory Koger (her only identified comparator) for equal work on jobs, the performance of which requires equal skill, effort, and responsibility.

It has been recognized by many courts, including the United States District Court for the Southern District of Florida, that "[t]he EPA is ill-suited for nonstandardized, high-level jobs because such positions do not, almost by definition, require equal skill, effort, and responsibility, performed under equal working conditions." *Calicchio v. Oasis Outsourcing Gp. Holdings, L.P.*, No. 19-CV-81282-RAR, 2021 WL 3123767, at *11 (S.D. Fla. July 22, 2021) (emphasis supplied) (*citing* Lauri Damrell et al., *The Pay Gap, The Glass Ceiling, and Pay Bias: Moving Forward Fifty Years After the Equal Pay Act*, 29 ABA J. Lab. & Emp. L. 395, 422 (2014)).[3] Nevertheless, to

---

[3] Congress enacted the EPA to remedy the serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his

establish a violation of the EPA, the plaintiff bears the initial burden of proving that her employer paid different wages to employees of the opposite sex "for equal work on jobs . . . which require[] equal skill, effort, and responsibility and which were performed under similar working conditions." 29 U.S.C. § 206(d)(1) (emphasis supplied). *See also Smith v. Fla. A & M Univ. Bd. of Trustees*, 831 F. Appx. 434, 439 (11th Cir. 2020), *cert. den. sub nom. Smith v. Fla. Agric. & Merch. Univ. Bd. of Trustees*, 209 L. Ed. 2d 752 (May 17, 2021). If the plaintiff demonstrates a violation of the EPA, the employer avoids liability by presenting evidence that the wage differential is justified by one of four exceptions set forth in the Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex." 29 U.S.C. § 206(d)(1). "If the employer establishes that the disparity is justified by one of these exceptions then the plaintiff must come forward with affirmative evidence that indicates that the proffered reason for the disparity is actually a pretext for sex discrimination." *Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991), *citing Brock v. Georgia Sw. Coll.*, 765 F.2d 1026, 1036 (11th Cir.1985 (in turn citing 29 U.S.C. § 206(d)(1)).

Here, the University is entitled to judgment as a matter of law on Count I of Plaintiffs' Complaints. First, Drs. Davidson-Schmich and Koger's jobs do not require equal skill, effort and responsibility, and they are not performed under similar working conditions. Second, the evidence is undisputed that gender is not a factor in Drs. Davidson-Schmich and Koger's wage differential. Rather, the evidence presented clearly establishes that the wage differential between Dr. Davidson-

---

role in society, should be paid more than a woman even though his duties are the same." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974 (quoting S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)). Because the EPA is concerned with actual work that is equal, not similar, even when many positions share a similar title—attorney, for example—the EPA is the wrong tool for challenging a professional's remuneration. *See, e.g., Wheatley v. Wicomico Cnty., Maryland*, 390 F.3d 328, 333 (4th Cir. 2007) (rejecting the possibility that the EPA requires uniform salaries for similarly labeled positions for which the market demand and required skills vary).

Schmich and Dr. Koger was and is based on factors other than sex. This affirmative defense has not been rebutted as Plaintiffs have presented no evidence from which the Jury can conclude that the reasons for the wage differential between Dr. Davidson-Schmich and Dr. Koger is a pretext for sex discrimination.

    **A.**    **Drs. Davidson-Schmich and Koger's Jobs Do Not Require Equal Skill, Effort and Responsibility, and They are Not Performed Under Similar Working Conditions**

A plaintiff must prove the "employer paid employees of the opposite gender different wages for equal work on jobs requiring equal skill, effort, and responsibility." *Garcia v. Univ. of Miami*, No. 1:12-cv-20009-UU, 2012 WL 12845123, at *5 (S.D. Fla. Dec. 20, 2012) (citing *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) and *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)).

To prevail on an EPA claim, a plaintiff must prove the "employer paid employees of the opposite gender different wages for equal work on jobs requiring equal skill, effort, and responsibility." *Garcia v. Univ. of Miami*, No. 1:12-cv-20009-UU, 2012 WL 12845123, at *5 (S.D. Fla. Dec. 20, 2012) (citing *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) and *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)). The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high. As the Eleventh Circuit has explained, "equal," as used in the EPA, means "virtually identical":

> When Congress enacted the Equal Pay Act, it substituted the word equal for comparable to show that the jobs involved must be ***virtually identical***, that is, they would be very much alike or closely related to each other. ***The restrictions in the Act were meant to apply only to jobs that are substantially identical or equal***. . . . [b]y substituting the term equal work for comparable work, which was originally suggested, ***Congress manifested its intent to narrow the applicability of the Act***. . . . Congress intended to permit employers wide discretion in evaluating work for pay purposes.

5

*Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (internal quotations and citations omitted) (emphasis supplied).

The controlling factor under the [EPA] is job content: "'[t]he prima facie case . . . focuses *solely* on the primary duties of each job, not duties that are incidental or insubstantial,' and, although formal job titles or descriptions may be considered, the controlling factor in the court's assessment of whether two jobs are substantially equal must be *actual job content*." *Revere v. McHugh*, 362 F. Appx. 993, 998 (11th Cir. 2010) (affirming grant of defendant's motion for summary judgment on female plaintiff's EPA claim because plaintiff failed to establish that a similarly situated male comparator received a higher pay, and even if she did establish a *prima facie* case, the difference in pay was based on a "factor other than sex" so it did not violate the EPA). *See e.g. Wheatley*, 309 F.3d at 332 (rejecting the argument that "employees with the same titles and only the most general similar responsibilities must be considered 'equal' under the EPA" as a "classic example of how one can have the same title and the same general duties as another employee, and still not meet two textual touchstones of the EPA—equal skills and equal responsibility."); *Soble v. Univ. of Maryland*, 778 F.2d 164 (4th Cir. 1985) (merely possessing the same tile of "assistant professor" was insufficient to satisfy the EPA requirement of "equal skills"). The Fourth Circuit Court of Appeals has explained the fallacy of focusing only on titles and generalizations, specifically in the context of academia:

> In alleging this necessary equality, a plaintiff may not rely on broad generalizations at a high level of abstraction. *Wheatley*, 390 F.3d at 332. But Spencer attempts just such an impermissibly general comparison. ***In Spencer's view, all University professors perform equal work because they all perform the same essential tasks***: preparing syllabi and lessons, instructing students, tracking student progress, managing the classroom, providing feedback, and inputting grades. . . . The performance of these tasks, Spencer posits, requires the same skills: studying, preparing, presenting, discussing, and so forth. . . . But these tasks and skills are shared by middle-school teachers and law-school professors, pre-algebra teachers and biomedical-engineering professors.

6

> . . .
>
> ***Spencer's bird's-eye view is particularly unpersuasive given the inherent features of academia. Professors are not interchangeable like widgets. Various considerations influence the hiring, promotion, and compensation of different professorial jobs***. *Cf. Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984) (discussing the tenure process). ***As a result, faculty salary decisions require a complex balancing of factors. Among other things, those decisions account for the differences in skill and responsibility attendant to different jobs***. . . . Evidence offered by Spencer proves this very point: The University systematically pays engineering professors more than humanities professors. . . . This reflects differences in skill along with market forces that compensate engineers more highly. ***This market reality confirms that Spencer's broad generalizations about tasks and skills, which apply to virtually all teachers, fail to satisfy her burden to show equal work***.
>
> . . .
>
> None of this is to say that the [EPA] cannot apply in the higher-education context. But in that context—one where the work is an exercise in intellectual creativity that can be judged only according to intricate, field-specific, and often subjective criteria—Spencer must provide the court with more than broad generalities to meet her burden. She must present evidence on which a jury could rely to decide that she, Shackleford, and Dial had equal jobs, not just that they all performed vaguely related tasks using nominally comparable skills. That is, there must be evidence showing the jobs were equal in the strict sense of involving "virtually identical" work, skill, effort, and responsibility, not in the loose sense of having some comparative value. *Wheatley*, 390 F.3d at 333.

*Spencer v. Virginia State Univ.*, 919 F.3d 199, 204-205 (4th Cir. 2019) (emphasis added).

The practical, subjective realities of determining the salaries of tenured professors (like Drs. Davidson-Schmich and Koger) are complicated and contextual:

> [T]he practical realities of hiring and compensating high-level executives deal a fatal blow to [EPA] claims. ***In cases such as these, no judge or jury should be allowed to second guess the complex remuneration decisions of businesses that necessarily involve a unique assessment of experience, training, ability, education, interpersonal skills, market forces, performance, tenure, etc***. Requiring Defendant and other companies to either pay senior executives the same amount or to come to court to justify their failure to do so is simply beyond the pale. In a perfect world, we would be able to grasp the complexities of such calculations and produce a formula that would bring forth the exact amount that any person should be paid at any moment in time. We do not live in such a world. (Emphasis added).

7

*Georgen-Saad v. Texas Mut. Ins. Co.*, 195 F.Supp.2d 853, 857 (W.D. Tx. 2002) (dismissing plaintiff's EPA claim because not all Senior Vice Presidents had the same duties and responsibilities that she had as Senior Vice President of Finance.) "Equality under the Act is a demanding threshold requirement. It requires a comparator to have performed work 'virtually identical' (or the apparent synonym, 'substantially equal') to the plaintiff's in skill, effort, and responsibility. *Spencer*, 919 F.3d at 203. Here, Plaintiffs failed to adduce sufficient evidence demonstrating that the content of the jobs performed by Drs. Davidson-Schmich and Koger, not the generalities, were virtually identical. *See Waters*, 874 F.2d at 799.[4] They failed to do so.

The trial evidence shows that the content of Dr. Davidson-Schmich's work is not substantially equal in skill, effort and responsibility as the content of Dr. Koger's work. The evidence established that, while both Dr. Davidson-Schmich and Dr. Koger both are tenured professors in political science, Dr. Davidson Schmich's subfield is Comparative Politics (including gender politics), with a focus on Germany, while Dr. Koger's subfield is American Politics. The teach different classes, do different research, write on different topics, publish in different journals and engage in different service to the University. That is enough to find that their work is not virtually identical in skill, effort and responsibility.

### B. Gender is Not a Factor in Drs. Davidson-Schmich and Koger's Wage Differential

---

[4] Recent decisions use "virtually identical" rather than "substantially similar." *See e.g., Polak v. Virginia Dep't of Environmental Quality*, 2021 WL 2750448 (E.D. Va. April 27, 2021) ("[t]he comparators and the plaintiff 'must have **virtually identical** jobs.'"); *Evans v. Int'l Paper Co.*, 936 F.3d 183, 196 (4th Cir. 2019) ("They must have **virtually identical** jobs."); *Slattery v. Precision Response Corp.*, No. 04-60931-CIV, 2005 WL 6103681, at *12 (S.D. Fla. June 30, 2005) ("the jobs involved must be **virtually identical**, that is, they should be very much alike or closely related to each other.") (*citing Waters*, 874 F.2d at 799); *Howard v. Lear Corp. EEDS and Interiors*, 234 F.3d 1002, 1005 (7th Cir. 2000) ("[t]o establish the equal work element, Howard must show that her job and the male employee's job involved a 'common core of tasks' or that 'a significant portion of the two jobs is **identical**'")

8

Even if the jury were to find that Plaintiffs presented sufficient evidence to prove that Drs. Davidson-Schmich and Koger had virtually identical jobs - - which they do not - - the University's evidence establishes that their pay differential is based on factors other than gender. The EPA provides four exceptions that justify a pay differential between the sexes: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The "catch-all defense" in subsection (iv) applies "when 'the disparity results from unique characteristics of the same job, from an individual's experience, training, or ability, or from special exigent circumstances connected with the business.'" *See Calicchio*, at \*11, (*citing Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 596 (11th Cir. 1994)).

In the university context, such factors include "(1) field of expertise and degree; (2) market rate and inversion; and (3) rank and promotion." *Schultz v. Bd. of Trs. of Univ. of W. Fla*., No. 306CV442/RS/MD, 2007 WL 2066183, at \*21 (N.D. Fla. July 13, 2007). *See also Summy-Long v. Penn. State Univ*., 226 F. Supp. 3d 371, 378-79 (M.D. Pa. 2016), aff'd, 715 F. Appx. 179 (3d Cir. 2017) (faculty salaries are a function of a combination of factors, including the faculty member's rank at hire, experience and specific expertise, and payment to faculty under a merit-based system rewards scholarly output and the attainment of prestigious national grants, as well as market factors such as the demand for and prestige of a particular discipline). Factors such as "outstanding service to the university, administrative duties, publications, research, supervision of doctoral students, and performance" are "not based on sex and are sufficient to sustain an employer's burden to show that the salary disparity does not result from sex discrimination." *Schwartz*, 954 F.2d at 623-24. The fact that some of these factors are inherently subjective does not make them any less legitimate. "So long as subjective business justifications, not part of a

merit system, are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." *Id.* (*citing Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1011 (11th Cir. 1984)). The fact that no one factor is dispositive is immaterial. *See Schultz*, 2007 WL 2066183, at *22 ("I find that the University has satisfied its burden of proving that any difference in Plaintiff's salary can be justified by a factor other than sex. While no individual factor, taken in isolation, is necessarily dispositive, the factors identified by the University, taken as a whole, conclusively explain why Plaintiff earns less than the male counterparts whom she identifies.").

Here, the evidence establishes that there is a distinct and profound difference between Dr. Davidson-Schmich and Dr. Koger with respect to their performance and the impact of the very different work that they do. The University has asserted the affirmative defense that any pay differential between Drs. Davidson-Schmich and Koger is based on any factor other than sex, including market forces, experience, reputation, impact in their respective fields and/or job performance. The evidence establishes that Dr. Davidson-Schmich, while a valued member of the faculty, is not a "superstar" in the field of Political Science while Dr. Koger certainly is. It is a much more difficult market to recruit someone in Dr. Koger's specialty of American politics than it is in Dr. Davidson-Schmich's specialty of comparative politics. This simple fact is demonstrated by the fact that, when Dr. Davidson-Schmich interviewed for the position she took at the University of Miami, there were forty-three (43) candidates vying for that job, while the position that Dr. Koger ultimately accepted at the University was one that the University was unable to fill and which remained open for two years. The evidence was unrefuted that the University's Political Science Department cannot afford to lose Dr. Koger because his area of expertise is something that the University needs and his accomplishments render him an attractive target for poaching by other universities.

It is undisputed that Dr. Koger publishes articles in the highest ranked political science journals and publishes books in the highest ranked outlets. When he was hired by the University of Miami, he already had published articles in the Journal of Politics and the American Journal of Political Science, two of the highest ranked and prestigious political science journals. He also had a contract with the University of Chicago Press for the publication of his book on the topic of filibuster. The University of Chicago Press currently is ranked in the top four with respect to prestigious peer-reviewed publications. Dr. Davidson-Schmich does not publish articles in the top tier journals and her books have been published by outlets that are far less prestigious, such as the University of Notre Dame Press, which is ranked number forty-eight. It is undisputed that it is far more difficult to get an article or a book published in the top tier publications and journals and, in academia, that factor matters with respect to the impact of one's work, both on the scholar's professional reputation and on the University. Dr. Koger's book on filibuster, published in 2010, won the prestigious Fenno Book Award of the American Political Science Association - - an award given only to one Political Science book each year. Dr. Davidson-Schmich never has received such recognition. Dr. Koger's published scholarly work has been cited by other scholars approximately four times as often as Dr. Davidson-Schmich's work is cited. While Dr. Davidson-Schmich attempted to dispute the importance of this factor, she, herself, touted her own article citations when attempting to achieve promotion and tenure. That recognition and impact matters in academia. Dr. Koger has been invited to testify before the United States Senate Rules Committee. That impact matters. Dr. Davidson-Schmich has never received such recognition for her work or expertise. Dr. Koger is constantly being sought out by the media for interviews, while Dr. Davidson-Schmich is not. The evidence established that, per the statistics gathered and maintained by the University, in the last five years, Dr. Koger has been quoted in the media 1700 times, while

Dr. Davidson-Schmich has been quoted in the media 29 times. Dr. Koger's reputation in his field is so stellar that he has been able to propose and obtain a donation of $5 million to the University to establish a Democracy Center.

When Dr. Davidson-Schmich was hired in 2000, she was hired with two males at the same level and at exactly the same salary. She does not believe there was any gender inequity that existed with respect to her hiring salary. Dr. Koger was hired in 2007, after four years as an Assistant Professor at another university, and he was paid a higher salary when he was hired based on the market forces then in existence, along with his expertise, his area of specialization, his accomplishments after teaching at another university for four years, his publication in top-tier journals, his then-existing book contract with the prestigious University of Chicago Press, the needs of the University to fill a position it had been unable to fill for two years and the University's fear that, once hired, based on his accomplishments, he could he hired away. These are recognized factors that support the University's affirmative defense that the salary differential between the two professors are based on recognized and legitimate factors other than sex.

### C. Plaintiffs Presented No Evidence from which the Jury can Conclude that the Reasons for the Wage Differential is a Pretext for Sex Discrimination

"A plaintiff can show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the proffered reason for the employment action so that a reasonable factfinder could find them unworthy of credence." *Kohser v. Protective Life Corp.*, 649 F. Appx. 774, 778 (11th Cir. 2016) (*citing Springer v. Convergys Customer Mgmt. Gp., Inc.*, 509 F.3d 1344, 1348 (11th Cir.2007)). "'[A] reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Kohser*, 649 F. Appx. at 778 (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). Accordingly, "it is not enough to '*dis* believe the employer; the

factfinder must believe the plaintiff's explanation of intentional discrimination.'" *Kosher* at 778. The *Kohser* court explained that courts are not in the business of "adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Koser* at 778 (*citing Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354, 1361 (11th Cir.1999).

"An employee cannot establish pretext 'by simply quarreling with the wisdom' of the defendant's proffered nondiscriminatory reason." *Reddy v. Dep't of Educ., Ala*., 808 F. Appx. 803, 810 (11th Cir. 2020) (*quoting Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000)) (en banc). And an employee "cannot recast the reason [proffered by the employer] but must meet it head on and rebut it." *Springer*, 509 F.3d at 1350. *See also Barsorian v. Grossman Roth, P.A*., 572 F. Appx. 864, 869 (11th Cir. 2014) (affirming summary judgment because plaintiff failed to meet the employer's reason "head on and rebut[] it.").

Dr. Davidson-Schmich admitted that, because professors move through the ranks with a percentage salary increase that starts from an initial point, starting salary is a determinative factor in any pay differential among professors. She also admitted that there was "gender equality" with respect to her starting salary given that she and two male professors were hired at the same salary. The evidence has established that the respective starting salaries of Drs. Davidson-Schmich and Koger, coupled with market conditions and the respective accomplishments and impact of each in their respective fields, explains and justifies the differences in their compensation. There exists no evidence - - and no evidence was presented - - to establish that such justifications are a pretext for discrimination.

For all of the foregoing reasons, judgment should be entered in favor of the University as a matter of law on Plaintiffs' EPA claims.

### III. THE UNIVERSITY IS ENTITLED TO A DIRECTED VERDICT ON COUNT II OF PLAINTIFFS' COMPLAINTS FOR VIOLATION OF Title VII

In Count II of their Complaints, Plaintiffs claim the University discriminated against Dr. Davidson-Schmich based on her sex, by paying her less compensation than Dr. Koger, her only identified comparator.

Under the *McDonnell Douglas* test, a plaintiff must establish a *prima facie* case of discrimination under Title VII by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff's employer treated similarly situated employees, who are not within the protected class, more favorably; and (4) the plaintiff was qualified for the job at issue. *See Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842-43 (11th Cir. 2000) (*referencing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The *McDonnell Douglas* elements are conjunctive: "each factor ***must*** be met in order for Plaintiff to successfully establish her prima facie case. To be 'similarly situated,' Plaintiff's comparators must be 'similarly situated in all relevant respects,' and '***must be nearly identical to the plaintiff*** to prevent courts from second-guessing a reasonable decision by the employer.'" *Garcia*, at *8 (citations omitted; emphasis supplied).

There is a burden shifting process to establish discrimination under Title VII:

> The plaintiff first has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. The burden then shifts to the defendant to 'articulate some legitimate nondiscriminatory reason' for the alleged discrimination. If the defendant produces such a reason, the plaintiff must then prove that the legitimate reason offered was a mere pretext for an illegal motive.

*Mulhall*, 19 F.3d at 597-98 (11th Cir. 1994) (*citing Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (in turn *citing McDonnell Douglas*, 411 U.S. at 802)). The employer's burden to articulate some legitimate nondiscriminatory reason for the alleged discrimination is "exceedingly light." *Prieto v. City of Miami Beach*, 190 F.Supp.2d 1340, 1351

(S.D. Fla. 2002 (*referencing Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir.1994)). Rather, "the burden of proof remains at all times with the plaintiff." *Mulhall*, at 597 (referencing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To succeed on a Title VII claim "plaintiff must prove discriminatory intent." *Mulhall*, 19 F.3d at 597. "'A plaintiff can [ ] present direct evidence of discriminatory intent or demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of ***intentional discrimination***.'" *Al-Hafnawi v. Public Health Trust of Miami-Dade Co., Fla.*, No. 19-20904-Civ-Scola, 2020 WL 3839832, at *4 (S.D. Fla. July 8, 2020) (emphasis supplied) (*citing Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1221 (11th Cir. 2019) (quotations and citations omitted)). For the same reasons articulated above, a directed verdict on Plaintiffs' Title VII claim is appropriate.[5]

With respect to the additional element under Title VII of discriminatory intent, Plaintiffs presented no direct evidence at trial that the University intentionally discriminated against Dr. Davidson-Schmich. Nor did Plaintiffs present a "convincing mosaic" of circumstantial evidence warranting an inference of intentional discrimination. *See Al-Hafnawi*, 2020 WL 3839832, at *4. The evidence presented at trial is unrefuted that gender played no part in the salary decisions made with respect to Dr. Davidson-Schmich and Dr. Koger. Because Plaintiffs Title VII claim fails by their lack of any proof of intent on behalf of the University, a directed verdict is warranted.

---

[5] The elements of an unequal pay claim are the "same under Title VII and Equal Pay Act." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981) (citing *Ammons v. Zia Co.*, 448 F.2d 117, 119-20 (10th Cir. 1971)). *See also Summy-Long v. Penn. State Univ.*, 226 F. Supp. 3d 371, 414 (M.D. Pa. 2016) ("[C]ourts have recognized that dispositions of claims brought pursuant to the Equal Pay Act 'are authoritative' in cases where plaintiffs also 'raise a claim of equal pay' under Title VII.") (quoting *Gunther v. Wash. Cty.*, 623 F. 2d 1303, 1313 (9th Cir. 1979), *aff'd,* 452 U.S. 161 (1981)), *aff'd*, 715 F. Appx. 179 (3d Cir. 2017).

## CONCLUSION

The University is entitled to a directed verdict on both claims asserted by the EEOC and by Dr. Davidson-Schmich. Based on the evidence presented, a reasonable jury would not have a legally sufficient evidentiary basis to find in favor of the Plaintiffs on either of their claims in this case. Accordingly, Defendant University of Miami, respectfully requests that the Court direct a verdict in favor of the University on all claims asserted against it by Plaintiff, EEOC, and Intervenor-Plaintiff, Dr. Davidson-Schmich, and grant such further and other relief as the Court deems appropriate.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Eric D. Isicoff
    Eric D. Isicoff
    Florida Bar No. 372201
    Isicoff@irlaw.com
    Teresa Ragatz
    Florida Bar No. 545170
    Ragatz@irlaw.com
    Christopher M. Yannuzzi
    Florida Bar No. 92166
    Yannuzzi@irlaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF this 10th day of March, 2022, upon the following:

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission, Miami District Office<br>Beatriz B. Andre<br>Ana C. Martinez<br>Carmen M. Cartaya<br>Miami Tower<br>100 SE 2nd Street, Suite 1500<br>Miami, Florida 33131<br>Tel. (305) 808-1753<br>Fax: (305) 808-1835<br>E-mail: beatriz.andre@eeoc.gov<br>E-mail: ana.martinez@eeoc.gov<br>E-mail: Carmen.Cartaya@eeoc.gov<br><br>*Counsel for Plaintiff, Equal Employment Opportunity Commission* | Amlong & Amlong, P.A.<br>Karen C. Amlong<br>Patricia L. Willis<br>500 Northeast Fourth Street<br>Fort Lauderdale, Florida 33138<br>Tel.: (954) 462-1983<br>Fax: (954) 523-3192<br>E-mail: KAmlong@TheAmlongFirm.com<br>E-mail: PWillis@TheAmlongFirm.com<br><br>*Counsel for Intervenor-Plaintiff, Louise Davidson-Schmich* |

By: /s/ Eric D. Isicoff
       Eric D. Isicoff